UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

JASON M. SMITH,

                          Defendant.

_____

**REPORT, RECOMMENDATION
AND ORDER**

15-CR-00002-WMS-JJM

        Defendant Jason Smith is charged in a six-count Indictment [9][1] with

production and possession of child pornography, in violation of 18 U.S.C. §§2251(a), 2251(e),

2252A(a)(5)(B), and 2252(b)(2).  This case was referred to me by Hon. William M. Skretny for

supervision of all pretrial proceedings.  *See* January 8, 2015 entry.  Before me are Smith's

motions for a bill of particulars and to suppress physical and identification evidence ([20], ¶¶1-5,

65-74, 79-81), as well as the government's cross-motion for reciprocal discovery. [21], p. 21 of

22, ¶J.[2]  Oral argument was held on September 22, 2015 [26], and thereafter I permitted Smith to

supplement his motion to suppress [28], and the government to respond [29].

        For the following reasons, Smith's motion for a bill of particulars is denied and

the government's motion for reciprocal discovery is granted, and I further recommend that

Smith's motions to suppress be denied.

---

[1]        Bracketed references are to the CM/ECF docket entries.

[2]        Smith's counsel agreed at the September 22, 2015 oral argument that all other portions of
Smith's pretrial motion [20] are resolved. September 22, 2015 Text Order [26].

**BACKGROUND**

The charges against Smith arose from an April 8, 2014 search warrant for his residence at 42 Byron Avenue in Tonawanda, New York that was  signed by New York State Supreme Court Justice Penny M. Wolfgang [21-1], p. 13 of 15. The search warrant was supported by the April 8, 2014 Affidavit of Town of Lancaster Police Detective Keith Kerl ([21-1], p. 3 of 15, ¶3), which contained the following information:

- - Detectives Kerl and Jason Batt interviewed a 15-year-old female on February 16, 2014, who told them that she met an individual named "James" on a social networking site, who identified himself as being 17 years old (id.).  The minor's profile on that site identified her by her true age (id., p 4 of 15, ¶3).  Her first in-person meeting with the subject occurred on February 16, 2014 (id.).  The suspect, who appeared to around 30 years old, drove her from Lancaster to "somewhere in Tonawanda" after stopping at a "Burger King in Depew" and "either a Dollar General or Dollar Tree in Cheektowaga" (id.).  When they arrived at the suspect's house, they had sexual intercourse (id., pp. 4-5 of 15 , ¶3).  She described the living room of the house as having red carpets (id., p. 4 of 15, ¶3);

- - Following the interview, the detectives assumed the minor's online identity and  requested the subject to call her (id., p. 5 of 15, ¶4).[3]  The telephone number of the call received ((716) 837-****) was traced to Smith and the subject residence (id., pp. 5-6 of 15, ¶4). DMV records also revealed that a vehicle matching the description provided by the minor was registered to Smith (id., p. 6 of 15, ¶4). The IP address of the subject's internet account used to communicate with the minor was also traced to a Time Warner account in Smith's name at the

_____

[3]     Detective Kerl's Affidavit skips from paragraph 4 to paragraph 7.

subject residence with a telephone number of (716) 837 -****(id., pp. 6-7 of 15, ¶4);

      - - Using the minor's online identity, the detectives had chat sessions with the subject during which "the subject requested to meet the victim again in person" and "discussed how sexually aroused he was while communicating with the female victim" (id., p. 7 of 15, ¶4); and

      - - On February 21, 2014, the minor selected Smith from a photo array (id., pp. 7-8 of 15, ¶4). She also identified interior and exterior photographs of the subject residence from a real estate website and "specifically remembered the red carpeting" (id., p. 8 of 15, ¶4).

      Detective Kerl's Affidavit stated that these facts established probable cause to believe, *inter alia,* that a rape in the third degree (New York State Penal Law §130.25) had occurred and that evidence of that crime was concealed at the premises (id., p. 11 of 15, ¶11).

## ANALYSIS

**A.    Smith's Motions**

    **1.    Motion to Suppress Physical Evidence**[4]

      Smith argues that Justice Wolfgang "lacked a substantial basis for making a probable cause determination". Saraceno Affirmation [20], ¶73.  Relying on the Lancaster Police Department reports from this investigation, he notes that "[i]nvestigators went to the burger king and several dollar stores in the area to view surveillance videos" but "were unable to identify the so-called victim or the defendant" (id., ¶69).  Based upon this, he argues that "it should have been clear to the investigators that the girl was lying to them" and "the police should not have

---

[4]    The government does not dispute Smith's standing to contest the search.

gone to the magistrate [*sic*] to obtain a search warrant" or "at a minimum . . . should have

disclosed to the magistrate that they knew the girl's statement contained some falsities" (id.,

¶70).

    In his post-argument submission, Smith also notes that whereas Detective Kerl's

Affidavit states that the telephone number of the call traced to Smith was (716) 837-**** (id.,

pp. 5 of 15, ¶4), the police report indicates that the telephone number was (716) 836-****

([29-1], p. 2 of 2).  Saraceno Affirmation [28], ¶3.[5]

    As noted by the government, Smith does not specifically request a hearing

pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  However, by pointing to  erroneous or

omitted information in the search warrant application (as opposed to describing why the

information contained in the application failed to establish probable cause), that is what Smith

appears to be seeking.  "To secure a Franks hearing, a defendant must both (1) make a

'substantial preliminary showing that a false statement knowingly and intentionally, or with

reckless disregard for the truth, was included by the affiant in the warrant affidavit' and (2) show

that 'the allegedly false statement [was] necessary to the finding of probable cause'".  United

States v. Morris, 509 Fed.Appx. 58, 60 (2d Cir. 2013) (Summary Order) (*quoting* Franks, 438

U.S. at 155-56).  "Omissions from an affidavit that are claimed to be material are governed by

the same rules." United States v. Ferguson, 758 F.2d 843, 848 (2d Cir.), cert. denied, 474 U.S.

1032 (1985). "The ultimate inquiry is whether, after putting aside erroneous information and

---

[5]        For the first time at oral argument Smith also argued - without evidentiary support -  that
the rape kit performed on the minor was negative for his semen.  Even if that argument had been timely
asserted and properly supported, Detective Kerl's Affidavit explains that the minor reported that Smith
wore a condom. [21-1], p. 5 of 15, ¶3.

material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000).

An applicant for a warrant "does not necessarily act with reckless disregard for the truth simply because he or she omits certain evidence that a reviewing court, in its judgment, considers to be clearly critical. Rather, the reviewing court must be presented with credible and probative evidence that the omission of information in a[n] . . . application was designed to mislead or was made in reckless disregard of whether it would mislead." United States v. Rajaratnam, 719 F.3d 139, 154 (2d Cir.2013), cert. denied, __U.S. __, 134 S.Ct. 2820 (2014) (emphasis omitted).  "Of course, the reckless disregard aspect of a Franks inquiry can sometimes be inferred from the omission of critical information in a[n] . . . application . . . . Subjective intent, after all, is often demonstrated with objective evidence.  But such an inference is not to be automatically drawn simply because a reasonable person would have included the omitted information . . . and the inference is particularly inappropriate where the government comes forward with evidence indicating that the omission resulted from nothing more than negligence, or that the omission was the result of a considered and reasonable judgment that the information was not necessary to the . . . application." Id. at 154-55 (emphasis omitted).  *See* United States v. Barnes, 399 F.Supp.2d 169, 182 (W.D.N.Y.2005) (Arcara, J./Foschio, M.J.) ("Allegations that amount to negligence or innocent mistake do not constitute the required showing. The focus is not on whether a mistake was made, but rather on the intention behind the mistake").

Nothing in the record suggests that Detective Kerl intentionally omitted the fact that he could not confirm that portion of the minor's statement concerning the stops she and

Smith made before going to his residence. While this portion of her story was not confirmed

through their efforts, there is nothing to indicate that they knew it was false as Smith argues. *See*

Saraceno Affirmation [20], ¶70 ("the police knew that the young lady's statements were lies").

Indeed, the police report indicates that the surveillance camera at  Burger King "doesn't give a

good look at any vehicles or occupants". [28-1], p. 2 of 3.   Likewise, although the government

alleges - and Smith does not dispute - that there were six Dollar Store/Dollar General stores in

the vicinity (government's Response [21], p. 16), the police report demonstrates that the

detectives checked the surveillance video from only two of these stores.  [28-1], p. 2 of 3.

  In any event, even if Detective Kerl's Affidavit  had included the fact that he

could not confirm this portion of the minor's version of events, there was other information in his

affidavit supporting the minor's reliability.  For example, she selected Smith from a photo array,

her description of the suspect's vehicle and the color of the rug in his home were determined to

be consistent with the vehicle registered to Smith and his home, and the detectives had online

chat sessions with the suspect in which he stated that he wanted to meet the minor again in

person and that he was sexually aroused.

  Smith correctly notes that the telephone number obtained from the suspect's call

as set forth in Detective Kerl's Affidavit ((716) 837-****) ([21-1], p. 5 of 15, ¶4) does not

match the telephone number identified in the police report ((716) 836-****). [28-1], p. 1 of 3.

However, there is nothing before me to suggest that this was anything more than an error.  As the

government argues, the police report demonstrates that two telephone numbers had been obtained

for the suspect (one from the suspect's call and the other from the social networking site), and it

appears that either the police report or Detective Kerl's Affidavit misidentified the telephone

number obtained from the suspect's call.  [29-1], p. 2 of 2.

        In any event, even if the telephone trace was not included in Detective Kerl's

Affidavit, the Affidavit contained other information linking Smith to the alleged crime.  For

example, the IP address associated with the suspect's e-mail account was traced to Smith. [21-1],

p. 7 of 15, ¶4.  Thus,  probable cause did not hinge on the telephone trace.  Therefore, I conclude

that Smith has not established his entitlement to a <u>Franks</u> hearing, and recommend that his

motion to suppress evidence be denied.


      **2.**       **Motion to Suppress Identification Evidence**

        Smith moves to suppress any testimony concerning out-of-court or in-court

identifications of him "on the grounds that the prior  identification procedure violated [his] rights

under the Fourth and Fourteenth Amendments".  Saraceno Affirmation [20], ¶79. Smith's

challenge is directed at his February 21, 2014 identification from a photo array [27].  Without

specification, he argues that "the identification procedure was conducted under unnecessarily

suggestive circumstances and, therefore, tainted and made unreliable any in-Court

identification".  Saraceno Affirmation [20], ¶80.  Smith requests a hearing pursuant to <u>United</u>

<u>States v. Wade</u>, 388 U.S. 218 (1967) (<u>id</u>.).

        "If there is a very substantial likelihood of irreparable misidentification [from a

pretrial identification] . . . the judge must disallow presentation of the evidence at trial."  <u>Perry v.</u>

<u>New Hampshire</u>, __ U.S.__, 132 S.Ct. 716, 720 (2012).  Determining whether the witness will be

permitted to "identify the defendant at trial normally requires a one-step or two-step inquiry.  The

first question is whether the pretrial identification procedures were unduly suggestive of the

suspect's guilt.  If they were not, the trial identification testimony is generally admissible without

further inquiry into the reliability of the pretrial identification.  In that circumstance, any question

as to the reliability of the witness's identifications goes to the weight of the evidence, not its

admissibility."  United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990), cert.

denied, 501 U.S. 1211 (1991).[6]  In determining whether a photo array is suggestive, "the principal

question is whether the picture of the accused, matching descriptions given by the witness, so

stood out from all of the other photographs as to suggest to an identifying witness that that person

was more likely to be the culprit".  Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986).  "The

manner in which an identification is conducted may also be unduly suggestive." United States v.

Swain, 2011 WL 4348142, *7 (S.D.N.Y. 2011).

　　　　"[T]he Constitution does not require trial courts to hold pretrial hearings

concerning the suggestiveness of an identification procedure."  United States  v. Ruggiero, 824

F.Supp. 379, 396 (S.D.N.Y. 1993), aff'd, 44 F.3d 1102 (2d Cir. 1995) (citing Watkins v.

Sowders, 449 U.S. 341, 349 (1981)).  See United States v. Archibald, 734 F.2d 938, 940 (2d Cir.

1984) (the defendant was not "deprived of due process by the district court's exercise of its

discretion in not holding a pretrial hearing on the issue of suggestiveness.  No per se rule requires

such a hearing" (emphasis omitted)).  To be entitled to a hearing to determine the admissibility of

identification testimony, the defendant must "set[ ] forth facts which, if proven, would entitle

---

[6]　　　　"[T]he Due Process Clause does not require a preliminary judicial inquiry into the
reliability of an eyewitness identification when the identification was not procured under unnecessarily
suggestive circumstances arranged by law enforcement." Perry, 132 S.Ct. at 730.

him to the relief sought".  United States v. McGee, 2000 WL 1520957, *14  (W.D.N.Y. 2000) (Elfvin, J./Foschio, M.J.) (citing United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir.1969), cert. denied, 396 U.S. 1019 (1970)).  See United States v. Williams, 2014 WL 144920, *1 (S.D.N.Y. 2014) ("Significantly, a defendant may not baldly request . . .  a Wade hearing.  To be entitled to a hearing, a defendant must instead allege facts supporting his contention that the identification procedures used were impermissibly suggestive.  A 'threshold showing' of suggestiveness is necessary in order to trigger a Wade hearing" (internal quotations omitted)); United States v. Morris, 2014 WL 1041309, *3 (S.D.N.Y. 2014) ("[B]ecause Defendant has failed to make a threshold showing of suggestiveness, there is no need for an evidentiary hearing"); Swain, 2011 WL 4348142, *7 ("Where, as here, Defendant's suggestion of impropriety in the presentation of a photo array is mere speculation, a pretrial hearing into the identification procedures is not warranted").  "In the absence of a sufficient pre-trial showing of impropriety, exploration of the circumstances surrounding the identification procedures may be properly left to cross-examination at trial."  United States  v. Salomon-Mendez, 992 F.Supp.2d 340, 341 (S.D.N.Y. 2014).

   The photo array from which Smith was identified on February 21, 2014 [27] does not appear to be suggestive on its face.  It contains similarly sized photographs of eight individuals, all of whom have similar characteristics in terms of age, facial features, and hair (id.). "To be sure, there are some minor differences in lighting, facial hair, and the like among the photographs. But these differences do not render the array suggestive." Williams, 2014 WL 144920, *2.

Smith also offers no explanation in his motion as to why the array itself or the procedures used in conducting the identification were suggestive.[7]   Therefore, he has failed to establish his entitlement to a Wade hearing.  *See* Williams, 2014 WL 144920, *2 (denying an evidentiary hearing where the defendant provided  "no facts that provide the context for the circumstances surrounding the alleged out of court identification[s]" and asked "for a hearing to develop a factual record 'from which this Court may divine the appropriateness of the identification procedure[s] employed'"); United States  v. Volpe, 42 F.Supp.2d 204, 223 (E.D.N.Y. 1999) ("Where a defendant's motion is based entirely on speculation as to how the procedures used in the identification might have been suggestive, and does not challenge the arrays themselves, a pre-trial hearing is not appropriate").  "While I can appreciate the difficulties defendants face in discovering whether improper procedures were followed in cases such as this where neither counsel nor their clients were present to view the interaction between the officers and the witnesses, I believe that their suspicion of improprieties may be adequately tested through cross-examination at trial."  United States v. Padilla, 1994 WL 681812, *8 (S.D.N.Y. 1994).  Therefore, I conclude that Smith has not established his entitlement to a Wade hearing, and recommend that his motion to suppress the identification be denied.

---

[7]   At oral argument Smith noted that the photograph used in the photo array was taken of him many years ago.  Assuming that is so, that would make it *more* difficult for the witness to identify him. Nor does his age in that photograph make him stand out from the others in the array, who generally appear to be of a similar age group.

3.        **Motion for a Bill of Particulars**

Smith seeks particularization of whether he is alleged to have acted as a principal

or accomplice, or both under 18 U.S.C. §2.  Saraceno Affirmation [20], ¶¶1-5.[8]  Fed. R. Crim. P.

("Rule") 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient

particularity the nature of the charge pending against him, thereby enabling defendant to prepare

for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a

second time for the same offense".  United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir.

1987).  "In deciding a motion for a bill of particulars, the important question is whether the

information sought is necessary, not whether it is helpful."  United States v. Conley, 2002 WL

252766, *4 (S.D.N.Y. 2002).

"A bill of particulars is required only where the charges of the indictment are so

general that they do not advise the defendant of the specific acts of which he is accused." United

States v. Walsh, 194 F.3d 37, 47 (2d Cir.1999)."Whether to grant a bill of particulars rests within

the sound discretion of the district court."  United States v. Panza, 750 F.2d 1141, 1148 (2d

Cir.1984).

Although "the burden is upon defendants to show that non-disclosure of the

requested particulars would lead to prejudicial surprise at trial or would adversely affect

defendants' rights",  United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y. 2014) (Scott, M.J.),

Smith offers no explanation why the particularization sought is necessary, much less relevant.

Therefore, his motion denied. See United States v. Williams, 88 F. Supp. 3d 117, 120 (N.D.N.Y.

---

[8]        Although there is no citation to the aiding and abetting provision of 18 U.S.C. §2 in the
Indictment, "[t]he government is not required to specifically plead aiding and abetting liability in the
indictment."  United States v. Kelley, 2006 WL 561230,*1 (S.D.N.Y. 2006).

2015) (denying motion for a bill of particulars where the defendant "has made no attempt to demonstrate need to prepare a defense or avoid surprise at trial"); United States v. Nguyen, 2007 WL 1111237, *6 (W.D.N.Y. 2007) (Foschio, M.J.) ("Defendant fails to specify any need for the particularization requests, as is her burden . . . . Rather, Defendant makes only bald, conclusory assertions that she is requesting such particularization, without proffering any explanation as to why such information is necessary . . . . As such, Defendant's particularization request simply is devoid of the specificity necessary to substantiate the requested particularization"); United States v. Gonzalez, 1994 WL 689065, *2 (S.D.N.Y. 1994) (A "claim that the information should be provided so that [the defendant] may 'defend herself' does not constitute the 'particularized showing of need' that is required in this circuit to warrant an order directing the government to submit a bill of particulars.  [The defendant] does not allege, for example, that the language of the indictment is so vague that she does not have adequate notice of the charges against her").


**B.      Government's Cross-Motion**

The government moves for reciprocal discovery pursuant to Rule 16(b). Government's Response [21], p. 21 of 22, ¶J.  Smith has not opposed this request.  Therefore, the government's motion is granted.  Smith "shall provide such discovery, if any, not later than 30 days prior to trial or such other date as the District Judge may direct." United States v. Sikut, 488 F.Supp.2d 291, 304  05 (W.D.N.Y. 2007) (Foschio, M.J./Arcara, J.).

**CONCLUSION**

For these reasons, Smith's motion for a bill of particulars ([20], ¶¶1-5) is denied and the government's motion for reciprocal discovery ([21], p. 21 of 22, ¶J) is granted, and I further recommend that Smith's motions to suppress ([20], ¶¶65-74, 79-81) be denied.

Unless otherwise ordered by Judge Skretny, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by November 20, 2015 (applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)).  Any requests for extension of this deadline must be made to Judge Skretny.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".   Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988)

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not

raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district

judge's refusal to consider the objection.

Dated: November 3, 2015


                                        /s/ Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge