UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------
UNITED STATES OF AMERICA

             -vs-                    15-CR-2

JASON M. SMITH,

                Defendant.
---------------------------------------

      Proceedings held before the

  Honorable Jeremiah J. McCarthy,

  Robert H. Jackson Courthouse,

  2 Niagara Square, Buffalo, New York,

  on September 22, 2015.


APPEARANCES:

SCOTT ALLEN,
Assistant United States Attorney,
Appearing for the United States.

DOMINIC SARACENO, ESQ.,
Appearing for Defendant.


AUDIO RECORDER:   Deborah A. Zamito


TRANSCRIBER:      Michelle L. McLaughlin, RPR,
                  Court Reporter,
                  (716)332-3560


(Proceedings recorded by electronic sound
recording, transcript produced by computer.)

1     THE COURT: Good afternoon. Please be
2 seated.
3     MR. SARACENO: Good afternoon, your Honor.
4     THE CLERK: On the record. This is United
5 States versus Jason M. Smith, case number 15-CR-2.
6 For the government, Scott Allen. For the
7 defendant, Dominic Saraceno. The defendant is
8 present.
9    We are here for oral argument before the
10 Honorable Jeremiah J. McCarthy.
11     THE COURT: Good afternoon, Mr. Smith.
12 Good afternoon, counsel.
13     MR. SARACENO: Good afternoon, your Honor.
14     THE COURT: Okay. Mr. Saraceno, it's my
15 understanding from communications with you
16 yesterday that the issue you want to argue is the
17 search warrant?
18     MR. SARACENO: Correct, your Honor. With
19 regard to the rest of the items outlined in my
20 motion, I think I can just rest on the paperwork
21 and the response from the people, and the Court can
22 make a decision based off of that.
23     THE COURT: Okay. Well, before -- is
24 there any -- based on the government's response, is
25 there any -- any aspect of your motion that you

1  consider to be satisfied or moot?
2          MR. SARACENO: Yes. I'd still be looking
3  for a Bill of Particulars, but --
4          THE COURT: Okay.
5          MR. SARACENO: But items two, three, four,
6  five, six, eight are -- I would consider satisfied.
7          THE COURT: Well, eight is the suppression
8  of physical --
9          MR. SARACENO: I'm sorry, not eight, nine.
10 Sorry, your Honor.
11         THE COURT: Okay. Nine.
12         MR. SARACENO: The oral statement.
13         THE COURT: Okay. So basically what
14 remains is Bill of Particulars and the challenge to
15 the search warrant, correct?
16         MR. SARACENO: Yes. And I do have a few
17 brief comments I'd like to make on the
18 identification as well.
19         THE COURT: Okay. All right.
20 Identification, which item is that?
21         MR. SARACENO: That would be my motion for
22 suppression of identification. There was a
23 photo -- eight-pack photo array used by the Town of
24 Lancaster Police Department.
25         THE COURT: Okay. Well, let's take up the

1     warrant first, and then we'll go to that.
2              MR. SARACENO:  Sure.  Well, your Honor,
3     with regard to the warrant, it's our position that
4     these are more than just mere omissions on the
5     detective's part when -- when forwarding the
6     warrant application to Judge Wolfgang.  Not only --
7     I understand that the government provided an
8     explanation for why the defendant might not have
9     been noticed in the Burger King video.  They also
10    provided an explanation for why the defendant might
11    not have been seen in the Dollar Store videos.
12         However, after reviewing the response, couple
13    of other items became apparent that I think
14    corroborate our position that the -- that the law
15    enforcement officials should have been more
16    forthcoming with the issuing judge.  And as an
17    example I would point out that in their response
18    they indicate that the law enforcement took -- they
19    assumed the Meetme account of one of the victims in
20    the matter, and that Mr. -- they claimed that the
21    defendant called back from an 837 number, and then
22    the last four digits in the motion are X'd out.
23         However, if you look in the Lancaster Police
24    Department police report that's dated
25    February 16th, 2014, on page 1, it says that the

1    number actually came from a completely different

2    number, the call-back number says 836-2761, not an

3    837 number.  This is an inconsistency that perhaps

4    Judge Wolfgang should have been made aware of.

5        The other important things that we submit Judge

6    Wolfgang should have been told about prior to

7    making her decision about whether or not to issue a

8    warrant was the fact that the victim claims she was

9    at the defendant's house and that she recognized

10   the house from the Zillow.com pictures, and she

11   especially recognized the red rug.  But what they

12   don't tell the Judge was that the victim claimed

13   that she was drinking rum at the defendant's house

14   and that they had sex in his room.

15       The law enforcement officials took the bottle

16   of rum, swabbed it for her DNA.  Came back

17   negative.  They swabbed the bed sheets for DNA.  No

18   trace of her DNA was found on the bed sheets

19   either.  And they also, that same night, sent her

20   for a rape kit test, and it was negative for the

21   defendant's sperm.

22       These are not just minor omissions, in our

23   opinion, that aren't really relative or relevant to

24   the issue of whether or not there was probable

25   cause to issue a warrant.

1              THE COURT:  Didn't the application state
2    that the female said he was -- that he was using a
3    condom?
4              MR. SARACENO:  Well, it might have, your
5    Honor, but how would that explain the fact that
6    none of her DNA was in the bed sheets?  And our
7    point is these are -- these are valuable pieces of
8    information that the judge should have been made
9    aware of.  They're not harmless omissions.  These
10   are significant substantial factors that I would
11   think a judge would want to know when deciding
12   whether or not to issue a warrant.
13             THE COURT:  Okay.  Okay.
14             MR. SARACENO:  And then with regard to the
15   identification --
16             THE COURT:  Let me hear from Mr. Allen
17   first on the -- just on the warrant.
18             MR. ALLEN:  Your Honor, with respect to
19   the last point that was made with regard to the
20   forensic test, this is the first time I'm hearing
21   that argument, so I'm reviewing the papers as we
22   go.  But I believe the affidavit predated the
23   results of any forensics that we're talking about
24   here.  So if that's the case, then the affiant
25   would not have had the benefit of knowing the

1    results of those tests when applying for this

2    warrant.  But before I make -- from what I'm seeing

3    here, if I'm relying upon the same report that I

4    believe defense counsel is, I believe the biology

5    analysis report, from what I'm seeing, comes around

6    May 28th of 2014, and the affidavit was signed on

7    April 8th, 2014.  So it predated it by roughly six

8    weeks, if I'm reading this correctly, your Honor.

9              THE COURT:  Okay.

10             MR. ALLEN:  And I apologize, your Honor.

11   Did you want my argument with respect to the entire

12   search warrant, or just that specific point that

13   Mr. Saraceno just made?

14             THE COURT:  No, with respect to -- I mean,

15   Mr. Saraceno, I take it, has reviewed both your

16   submissions, and Mr. Saraceno has concluded his

17   argument on the warrant.

18             MR. ALLEN:  Yes, your Honor, thank you.

19   Your Honor, I believe the issue here is whether we

20   have a material omission in this affidavit, which

21   would have had an effect on the magistrate's

22   finding of probable cause.  First, your Honor, it

23   is the government's position that there is not a

24   material omission here.  The government put in its

25   response that it is correct that investigators did

1    not see the defendant in the limited surveillance
2    video that was reviewed.  The reason that the
3    surveillance video that was reviewed was limited is
4    because this 15-year-old girl could not articulate
5    the route that was taken while she was in the
6    defendant's vehicle.  As a result, there were a
7    number of possible Dollar Store locations that they
8    could have stopped at.
9        The investigators did identify particular
10   Dollar Store locations, but ultimately they
11   couldn't pinpoint the specific time, they couldn't
12   pinpoint the specific store.  It was -- at that
13   point it was proving to be an inefficient method of
14   investigating this case, especially when they knew
15   that there were so many other avenues to
16   approach -- to take in order to corroborate SJ's
17   account of events.
18       Your Honor, this is not a material omission
19   that was left out of the affidavit.  Their
20   inability to see the defendant in surveillance
21   tapes was merely an unproductive and unsuccessful
22   effort in the course of their investigation, which
23   the Smith case specifically says is not necessary
24   from the affidavit.
25       However, your Honor, putting all of that aside,

1   even if that was a material omission, the amount of
2   probable cause linking this back to the defendant
3   is overwhelming, your Honor, and that's detailed in
4   the government's response.  First and foremost,
5   your Honor, the investigators, with the consent of
6   SJ, took over her identity on her Meetme.com
7   profile.  Through that profile they contacted the
8   defendant, and he was asked to call them at a
9   specific number.  The number from which the
10  defendant contacted law enforcement tied directly
11  back to the defendant's house on Byron Avenue,
12  which is where the defendant resided.
13       Furthermore, through subpoenas law enforcement
14  was able to determine that the Meetme.com profile,
15  MixMasters;D, was tied back to a Gmail account,
16  RyanBraden8@Gmail.  Both the Meetme.com profile and
17  the Gmail account were traced back to an IP
18  address, and that IP address, like the phone
19  number, your Honor, was traced back to 42 Byron
20  Avenue, which was the residence of the defendant
21  Jason Smith.  With that information, there was
22  probable cause to determine that it was, in fact,
23  the defendant Jason Smith who had the sexual
24  encounter with this minor female.
25       But there was more, your Honor.  In addition,

1    SJ, the minor female, she positively ID'd the
2    defendant in a photo lineup, which included eight
3    photo arrays, and she positively identified the
4    defendant's residence, because the house was posted
5    on Zillow.com.  In other words, your Honor, the
6    probable cause linking this back to the defendant
7    was overwhelming, and had the -- had the
8    unsuccessful efforts of the investigators been
9    included in the affidavit that went to the
10   magistrate judge been included, it would not have
11   affected her determination of probable cause, your
12   Honor.
13       Further, I'd like to add that there's
14   absolutely no showing of bad faith on any
15   investigators here in putting that point in.  The
16   motion is simply conclusory.
17           THE COURT:  Okay.  Thank you.  Just one
18   question, and maybe it's not directly relevant to
19   what either of you are arguing.  But I just notice
20   in reviewing the search warrant application, the
21   address is blacked out on the affidavit.
22           MR. ALLEN:  Your Honor, in an effort to
23   protect the personal information of the defendant,
24   I personally blacked that out.
25           THE COURT:  Okay.  So that wasn't blacked

1       out when it was presented --

2              MR. ALLEN:  Yes, your Honor.

3              THE COURT:  -- to Judge Wolfgang.

4              MR. ALLEN:  And if the Court would like an

5       unredacted copy, I could make --

6              THE COURT:  No, no, no.  I just wanted to

7       make sure it wasn't blacked out when it was

8       presented for signature.

9          You agree, Mr. Saraceno?

10             MR. SARACENO:  I do agree, your Honor.

11      But I would point out that in reviewing the search

12      warrant application again, they don't even mention

13      in their application --

14             THE COURT:  Would you just pull the -- or

15      get a little closer to the microphone.

16             MR. SARACENO:  Sorry, Judge.  It was

17      mentioned that the results of the rape test kit

18      were not back yet, and that's why the judge was not

19      told that they were negative for Mr. Smith's DNA.

20      But the search warrant application doesn't even

21      mention that the rape kit was done that night.

22             THE COURT:  Okay.  Now you wanted to

23      address also identification?

24             MR. SARACENO:  Yes, Judge.  With regard to

25      the photo array, not sure if you have --

1           THE COURT: Just a second. We don't have
2    that.
3           MR. SARACENO: I'm sorry, that's my fault,
4    because I didn't say I was going to talk about it
5    today, but then my client pointed out a couple of
6    things that I thought should be addressed.
7           THE COURT: Okay.
8           MR. SARACENO: Do you want me to hand this
9    one up?
10          THE COURT: Well, I'm going to want a
11   copy. Do you have an extra copy -- or, Debbie,
12   don't -- why can you make a copy, and, Mr. Allen,
13   you have a copy, right?
14          MR. SARACENO: Yes, your Honor.
15          THE COURT: Okay. Thanks.
16          MR. SARACENO: Thank you. Before I get to
17   this, I do want one more time just to point out
18   that the phone number in the police report is
19   different than the phone number in the government's
20   response. I don't know if they gave an explanation
21   for that or not.
22          THE COURT: I don't think your motion even
23   attached the police report, did it?
24          MR. ALLEN: No, your Honor.
25          THE COURT: Well, I'm basically -- I'm

1    going to focus what was raised in the motion.  But

2    on the photo array, what were you going to say?

3            MR. SARACENO:  With regard to that, I

4    didn't know -- when I was drafting my motion, I

5    didn't -- I didn't get that new -- that incorrect

6    phone number until I got their response, the 837

7    number.  So I would have no way of knowing until I

8    got their response.  I would have had to have

9    supplemented my motion.

10           THE COURT:  All right.  Then I'll give you

11   an opportunity to submit the police report and

12   supplement your motion briefly with respect to

13   that, and I'll give Mr. Allen an opportunity to

14   reply then.

15           MR. SARACENO:  Thank you.

16           THE COURT:  Okay.  And I'll talk about the

17   time frame after we're done here.  So --

18           MR. SARACENO:  Okay.

19           THE COURT:   -- on the array.

20           MR. SARACENO:  Yes.  With regard to the

21   array, it's clearly suggestive on its face.  Most

22   of the men in the array look like they're in their

23   late 20s or early 30s, which is close to the age

24   that the defendant is now.  But this is a picture

25   of him when he was 17 years old.  I'd also point

1  out that the picture, if you compare it to the
2  picture above it, and the other ones to the left of
3  it is substantially wider.  The border of the
4  picture is wider than the other ones, which would
5  draw -- which would make a viewer naturally drawn
6  to that picture as opposed to the other ones.  And
7  that in conjunction with the fact that the one --
8  the picture that's circled looks like he's about
9  half the age of the other people, also makes it
10 unduly suggestive.
11         THE COURT:  Okay.  Oh, I'm sorry.
12         MR. SARACENO:  Sorry.  There's one more
13 thing.  It's the only picture in which the
14 individual is smiling.  The rest of the individuals
15 have very serious face expressions, if not frowns.
16 The 17-year-old is smiling in this picture.
17         THE COURT:  Okay.  Anything you want to
18 say, Mr. Allen?
19         MR. ALLEN:  Nothing with respect to the
20 width of the photo.  I will indicate or ask the
21 Court to take note that SJ was able to positively
22 identify the defendant, despite the fact that the
23 photo is rather dated.  She was able -- you know,
24 she was able to identify him positively, even
25 though that photo is, you know, as the defense

1   counsel pointed out, even though he's much older

2   now closer to the time of the incident than he was

3   when he was depicted in this photograph.

4   THE COURT: Okay.

5   MR. ALLEN: If anything, I think that cuts

6   in favor of the government, your Honor.

7   THE COURT: All right. With respect to

8   the argument about the phone number and the police

9   report, Mr. Saraceno, I'll give you a week to

10   submit any -- a copy of a report and any further

11   argument that you wish on that. I'll give

12   Mr. Allen then a week from then to respond. And

13   then the motion will be deemed submitted.

14   MR. ALLEN: Yes, your Honor.

15   MR. SARACENO: Thank you, your Honor.

16   THE COURT: Okay.

17   MR. ALLEN: Your Honor, with respect to

18   that, and I understand why we're -- why defense --

19   the argument defense counsel is making why there's

20   another week. But I just point out that the number

21   of -- the 837 number was accurately reflected in

22   the affidavit. So the response was not the first

23   time that 837 ever appeared. I just want that to

24   be clear for the record, your Honor.

25   THE COURT: Okay. I understand, and I'll

Case 1:15-cr-00002-WMS-JJM   Document 71   Filed 04/20/17   Page 16 of 17

16

1   consider the supplemental arguments in that light.
2           THE CLERK:   Yes, your Honor.
3           THE COURT:   Thank you both.
4           MR. ALLEN:   Yes, your Honor.
5           MR. SARACENO:   Thank you.
6           THE COURT:   Defendant's remanded.
7           *     *     *     *     *     *

1                             CERTIFICATION
2
3           I certify that the foregoing is a
4     correct transcription, to the best of my
5     ability, from the electronic sound recording
6     of the proceedings in this matter.
7
8
9                             s/Michelle L. McLaughlin
                              Michelle L. McLaughlin, RPR
10                                  Court Reporter