IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.

JASON SMITH,

           Defendant.

19-CV-1365-S
15-CR-0002-S

---

## GOVERNMENT'S RESPONSE TO DEFENDANT JASON SMITH'S MOTION TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE

Defendant Jason Smith ("Defendant") moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Dkt. 74.  The United States of America, by and through James P. Kennedy, Jr., United States Attorney for the Western District of New York, David J. Rudroff, Assistant United States Attorney, of counsel, opposes the motion for the reasons discussed below, and submits the Court should deny the motion without an evidentiary hearing.

## PRELIMINARY STATEMENT

Defendant moves to vacate his conviction and sentence due to allegedly ineffective assistance of counsel.  As a preliminary matter, this motion is precluded by Defendant's knowing and voluntary plea, which included a collateral attack waiver.  Moreover, even if Defendant's motion were not barred by his guilty plea, his contentions are meritless.   For the reasons below, this Court should deny the motion.

## FACTS

### A.    The Investigation, Search Warrants and Suppression Motion

Defendant pled guilty to two counts of producing child pornography in violation of 18 U.S.C. § 2251.   Dkt. 41, 42.   Prior to that, Defendant filed a pretrial motion which sought, among other things, the suppression of evidence seized pursuant to a search warrant issued by Hon. Penny M. Wolfgang, of the New York State Supreme Court. A 42-44.[1]

In the search warrant application, detective Kern of the Lancaster, New York Police Department stated that on February 16, 2014 police received a report that a 15-year-old girl (S.J.) had been missing for several hours.   A 102.   S.J. returned home as detectives investigated and told the police that she was with an adult male with whom she had communicated online through Meetme.com.   A 102-103.   She knew the man only as "James."   *Id.*   S.J. said that she was at a birthday party, but left because she and "James" made arrangements for him to pick her up nearby.   *Id*.   "James" arrived in a small, grey 4-door car.   *Id*.   After stopping at a Burger King and a dollar store, "James" took S.J. to his house, gave her alcohol and marijuana, and had sex with her.   A 103-04.

The police then took over the Meetme.com account through which S.J. communicated with "James."   Pretending to be S.J., the police enticed "James" to call them.   Through police and Department of Motor Vehicle databases, the police quickly learned that the phone number was associated with 42 Byron Avenue, Tonawanda, New York, where Defendant

---

1 Defendant appears to have attached the entire appellate record to his motion, and citations to "A__" are to that record, found at Dkt. 74.

lived.   Moreover, a vehicle matching the description of "James'" car was registered to Defendant at that address. A 104-105.

The police also learned the e-mail address "James" used from Meetme.com.   A 105. Following the e-mail lead, police issued a subpoena to Meetme.com, and learned IP information that again pointed to Defendant at 42 Byron Avenue, Tonawanda, New York. A 105-106.   A detective again assumed S.J.'s identity on Meetme.com and chatted with "James," during which "James" said he wanted to meet S.J. again, and discussed how sexually aroused he was while communicating with her.   A 106.   Four days later, S.J. identified a photograph of Defendant in an eight-photograph array. She said Defendant was the person with whom she had met and had sex.   A 106-107.   S.J. also identified photographs of the exterior and interior of 42 Byron Avenue as the place Defendant took her to have sex.   A 107.

Based on this, Judge Wolfgang issued a warrant on April 8, 2014 ("Original Warrant"), authorizing the search of 42 Byron Avenue, Tonawanda, New York for evidence of Rape in the Third Degree, a violation of N.Y. PENAL LAW 130.25(2).   A 100-111.   The warrant specifically authorized the search of "computers, computer systems, tablets, data storage devices, including but not limited to compact discs, DVD's [sic], flash drives, thumbs [sic] drives, hard drives, etc."   A 100.   The police executed the warrant and seized evidence, including several electronic media storage devices as specified in the warrant.   A 90.

On April 30, 2014, police sought to amend the Original Search Warrant to allow the Western New York Regional Forensics Laboratory ("WNYRFL") to search the devices the officers seized ("Amended Search Warrant").   Judge Wolfgang issued the Amended Search Warrant, which referenced and incorporated the Original Search Warrant.   A 48

On July 2, 2014, the police sought another amended search warrant from Judge Wolfgang.  The July 2 warrant authorized police and WNYRFL to search the electronic devices they seized for evidence of child pornography.   A 49-50.

Defendant argued in his motion to suppress that the detective who sought the Original Search Warrant omitted material information from the application.   Dkt. 20.   Specifically, he asserted that the application failed to advise Judge Wolfgang that investigators viewed surveillance video at the Burger King where Defendant allegedly took S.J., and at several dollar stores in the area, but were unable to identify Defendant or S.J. in any videos.   A 42. Defendant also argued that the telephone number specified in the search warrant application, which the police had gleaned from their initial Meetme.com investigation, differed from that specified in a Lancaster Police Department report documenting the investigation. A 118-19, 145. Finally, Defendant argued that the warrant application did not advise Judge Wolfgang that a rum bottle and bed sheets seized from Defendant's house were negative when tested for S.J.'s DNA, and that a rape kit administered to S.J. was negative for Defendant's sperm. A 119.

Magistrate Judge McCarthy recommended that the Court deny Defendant's motion to suppress physical evidence.   A 151-57.   Magistrate Judge McCarthy found that the detective had not intentionally omitted his inability to corroborate the details S.J. gave. Further, it did not mean that the detectives must necessarily have concluded that S.J. was lying and failed to advise Judge Wolfgang.   A 155-56.   Moreover, S.J.'s reliability was supported by other details of the investigation, notwithstanding the inability of the police to corroborate the Burger King and dollar store details.   A 156.

As to the discrepancy between the telephone numbers, the magistrate judge found that there was nothing to suggest that this was anything more than an error.   A 156.   And even if the telephone trace was removed from the application, other information, including the IP address associated with the Meetme.com profile, linked Defendant to the crime.   A 157.[2]

This Court adopted the Report and Recommendation in its entirety, and denied Defendant's motion.   Dkt. 36; A 165.

**B.     The Plea Agreement and PSR**

Defendant pled guilty to two counts of producing child pornography.   Dkt. 41. These counts were not related to his sexual contact with S.J., but were based on Defendant's abuse of two other victims.

---

2 The DNA issue was apparently resolved at oral argument when the Government informed the Court that the negative DNA tests post-dated the warrant application by approximately six weeks, and therefore could not have been disclosed to Justice Wolfgang.

As to Count 1, Defendant agreed that he had sexually abused "Victim 1," his friend's child.   The friend entrusted the child to Defendant so he could take her to the pool, the park, church, or Chuck E. Cheese.   The child called Defendant "Uncle Jay."   Defendant had sex with the child more than once, and produced visual depictions of it.   A 170.   Concerning Count 2, Defendant admitted that he had sexual intercourse with "Victim 2," a child under 16 years of age, whom he met on a social networking website.   He took pictures of the encounter.   *Id.*   The government agreed to dismiss the remaining 4 counts of the Indictment. Dkt. 41.

The parties anticipated that Defendant's Guidelines range of imprisonment was either 720 months or 262 to 327 months. A 173-74.   Defendant and the government each reserved the right to argue for a non-Guideline sentence.   A 174.

Defendant expressly waived his right to appeal any sentence of imprisonment of 720 months or less, and the government agreed that it would not appeal a sentence of 262 months or more.   A 174, 177.   Defendant reserved his right under FED. R. CRIM. P. 11(a)(2) to appeal "the denial of the defendant's motion for suppression of physical evidence seized by way of a search warrant executed on 42 Byron Avenue, Tonawanda, New York, pursuant to the report and recommendation of the Honorable Jeremiah J. McCarthy, United States Magistrate Judge, entered on November 3, 2015, and the decision and order of the District Court entered on January 5, 2016." A 178.

At the Rule 11 plea colloquy, the District Court specifically addressed Defendant's waiver of his right to appeal his sentence.   A 196.   The district court stated the plea agreement "makes clear that if I sentence you to a guidelines sentence or less, you give up your right to appeal or to challenge the sentence for any other legitimate reasons; do you understand?"   A 196.   Defendant replied: "I do."   *Id.*

Probation prepared a PSR to assist the Court in sentencing.   The PSR described Defendant's conduct in greater detail than the factual basis set forth in the plea agreement. Law enforcement recovered approximately 144 photographs of Victim 1 from the "deleted space" of a hard drive seized from Defendant's residence, half of which met the definition of child pornography.   Dkt. 62 ¶¶ 26-31.   At least one photograph depicted Defendant performing oral sex on Victim 1.   *Id.* ¶ 28.   In others, Victim 1 is wearing lingerie and exposing her vagina or her buttocks, and in yet another, Victim 1 is laying on her stomach with Defendant on top of her with his penis on her buttocks.   *Id.* ¶ 31.   In an interview, Victim 1 identified herself in three photographs, and said that she was 8 or 9 years old when Defendant took them.   *Id.* at ¶ 33.   Victim 1's mother said that Defendant had unsupervised access to Victim 1 beginning when Victim 1 was 5 or 6 years old.   *Id.* ¶ 32.   Defendant was roughly 30 to 32 years of age when he sexually abused Victim 1.   *Id.* ¶ 34.

Victim 2 told law enforcement that she and Defendant met through Meetme.com and another social media application when Victim 2 was approximately 12 years old.   Defendant was approximately 30.   *Id.* ¶ 38.   On one occasion, Defendant picked her up at her home at around midnight, drove her to his house, had sexual intercourse with her, and took

photographs of her while she was naked.   Defendant then took Victim 2 back to her house at around 6 a.m.   *Id.* ¶ 38.   Victim 2's mother confronted her and Victim 2 told her that she had been with someone she met online.   Victim 2 underwent a psychiatric examination for thoughts of self-harm.   *Id.* ¶ 39.

In September 2013, when Victim 2 was still under 16, Defendant sent Victim 2 a friend request on Meetme.com.   They again met, Defendant had oral and vaginal sex with her at his house, and again took photographs of her.   *Id.* ¶ 40).   Law enforcement recovered at least 19 photographs of Victim 2 from one of Defendant's computers, in which she was nude and exposing her breasts and vagina.   In another photo, it appears that Defendant is having sexual intercourse with her.   *Id.* ¶ 41.

The PSR also recounted the details of Defendant's sexual contact with S.J., and the investigation that followed.   *Id.* ¶¶ 17-25.   Finally, the PSR stated that FBI agents interviewed three other young women, all of whom stated that they met Defendant on Meetme.com when they were 16 years of age or younger, and that each of them engaged in oral or vaginal sex with him while they were minors. *Id.* ¶¶ 85-91.   One of them, who identified herself as Defendant's girlfriend when she was interviewed in September 2014, said that she first had sex with him when she was 14 and he was in his twenties, and that he took nude photographs of her.   *Id.* ¶ 86.   Another said that she believed Defendant fathered her child.   *Id.* ¶ 88.   When she contacted Defendant and told him about the child, he allegedly said, "I have another girlfriend and a kid on the way. I don't have time for you." *Id.*

**C.     Sentencing and post-conviction proceedings**

At sentencing, over Defendant's objection, the district court adopted the findings of the PSR and concluded that the Guidelines range for imprisonment was 720 months.   A 313-14.   The Court imposed an aggregate sentence of 480 months' imprisonment, consisting of consecutive terms of 240 months on each count.   A 333.

Defendant appealed, arguing that his counsel was ineffective for failing to challenge the validity of the search warrants, and that his sentence was unreasonable.   The Second Circuit affirmed his conviction, but declined to address the merits of Defendant's ineffective assistance of counsel claims.

This Section 2255 motion followed.   Defendant has not filed any previous motion for relief in this Court.

**ARGUMENT**

The Court should deny Defendant's motion, and should do so without an evidentiary hearing.   First, the motion is barred by (1) Defendant's knowing and voluntary guilty plea, supported by consideration; and (2) the collateral attack waiver contained within his plea agreement.

Furthermore, even if the motion were not barred on those grounds—and it is—his claims are otherwise meritless. Although Defendant argues his counsel rendered ineffective assistance on the suppression motion—by moving for suppression on *Franks* grounds rather

than arguing lack of particularity and facial invalidity—counsel employed reasonable strategy.   In addition, Defendant fails to establish that the challenges he advocates would have been successful and he therefore fails to establish that he was prejudiced.

Additionally, although Defendant argues ineffective assistance at the plea proceedings—by failing to (1) obtain a plea agreement guaranteeing a sentence less than the statutory maximum and (2) arguing an affirmative defense regarding "active or coercive" conduct—both claims are meritless.   Defendant was, in fact, sentenced to less than the statutory maximum, so counsel's failure to get a guarantee to that effect cannot have resulted in any prejudice.   Furthermore, the affirmative defense argument is so lacking in merit that Defendant cannot have suffered prejudice from counsel's failure to make it.

Finally, although Defendant argues that counsel was ineffective for failure to make certain objections and sentencing, and for making reference to Defendant's potential civil commitment, the sentencing arguments, again, lack merit and fail to identify or establish prejudice.   The Court should therefore deny Defendant's motion without an evidentiary hearing.

I.   **This motion is precluded by Defendant's knowing and voluntary guilty plea and the collateral attack waiver in his guilty plea.**

It is well-settled that a knowing and voluntary collateral attack waiver in a plea agreement will preclude a subsequent § 2255 motion.   *Sanford v. United States*, 841 F.3d 578, 580-81 (2d Cir. 2016); *United States v. Djelevic*, 161 F.3d 104, 106-107 (2d Cir. 1998) (noting

10

that it is "well-settled that a defendant's knowing and voluntary waiver of his right to [collaterally attack] a sentence within an agreed upon guidelines range is enforceable").   The Second Circuit has emphasized that collateral attack waivers should be enforced lest the Court "render the plea bargaining process and the resulting agreement meaningless."   *United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993); see also *United States v. Granik*, 386 F.3d 404, 412 (2d Cir. 2004) ("Knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants.").

The only exception to this procedural bar is where alleged ineffectiveness of counsel rendered the movant's plea, and the appeal and collateral attack waivers therein, unknowing and involuntary. *See United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam).   Importantly, however, the movant bears the burden of establishing that a collateral attack waiver was obtained unknowingly or involuntarily.   *United States v. Wildes*, 910 F.2d 1484, 1486 (7th Cir. 1990); *see also United States v. Hargrove*, 2004 WL 2123497, *2 (W.D.N.Y. August 10, 2004) ("the petitioner bears the burden of showing that the waiver of his right to appeal or collateral attack his sentence was not knowing or voluntary").

Moreover, plea bargaining "is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260 (1971).   "It is well settled that a voluntary and intelligent plea of guilty made by an accused

person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998).

The Supreme Court has further stated:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).   Defendant's plea was indeed both counseled and voluntary, and should therefore foreclose this collateral attack.

## A.   The collateral attack waiver in Defendant's plea agreement precludes this motion.

Here, Defendant's plea agreement provides, in relevant part:

> [Defendant] understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  [Defendant], however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court, which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 18(a), above, notwithstanding the manner in which the Court determines the sentence.

Dkt. 41, ¶ 25 (emphasis added).   Defendant and the Government agreed that he would waive his right to collaterally attack any sentence below 720 months' incarceration.   Id., ¶ 18(a).   The Court sentenced Defendant to 480 months' incarceration, far below the bargained-for maximum in the plea agreement.   Dkt. 61.   The collateral attack waiver was

therefore triggered, and bars this motion. *Sanford*, 841 F.3d 578, 580 (2d Cir. 2016); *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000).

**B.   Defendant's guilty plea was knowing and voluntary.**

Initially, it must be noted that Defendant did not challenge the validity of his guilty plea on direct appeal, and therefore, to the extent the Court reads this motion as raising that argument now, Defendant procedurally defaulted the claim. *Bousley*, 523 U.S. at 621 ("petitioner contested his sentence on appeal, but did not challenge the validity of his plea. In failing to do so, petitioner procedurally defaulted the claim he now presses on us.")

In any event, the record demonstrates that Defendant's guilty plea was knowing and voluntary. Defendant's plea was executed pursuant to Rule 11 of the Federal Rules of Criminal Procedure, which dictates that the District Court must ensure that a plea is knowing and voluntary. *Hill v. Lockhart*, 474 U.S. 52 (1985). "A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea . . . [a] plea is knowing and intelligent when the defendant is competent, aware of the charges and advised by competent counsel." *United States v. Galbraith*, 313 F.3d 1001, 1006 (7th Cir. 2002), citing *Brady v. United States*, 397 U.S. 742, 755 (1970); *see also*, *Godinez v. Moran*, 509 U.S. 389, 401 (1993) (the purpose of the "knowing and voluntary" inquiry . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced); *United States v. Ready*, 82 F.3d 551, 557 (2d Cir. 1996).

"Three core concerns underlie [Rule 11]: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Siegel*, 102 F.3d 477, 481 (11th Cir. 1996); *see also United States v. Hernandez-Fraire*, 208 F.3d 945 (11th Cir. 2000). To accomplish this, Rule 11 "ensures a colloquy that 'exposes the defendant's state of mind in the record through personal interrogation.' " *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986) (citations omitted).   "[W]here the court has scrupulously followed the required procedure, 'the defendant is bound by his statements in response to that court's inquiry.' " *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992) (citations omitted).

Here, Defendant's guilty plea was both knowing and voluntary.   Prior to accepting his guilty plea, the Court questioned Defendant under oath and on the record.   The Court confirmed that Defendant was competent to enter a plea.   A 187-188.   The Court also confirmed that Defendant reviewed the plea agreement with his attorney.   A 188-189.   The Court confirmed that Defendant understood his right to counsel, his right to appeal, his trial rights, the government's burden of proof at trial, his right to cross-examine witnesses, his right to remain silent, the nature of the charges against him, the maximum penalties he faced, and the sentencing guidelines calculations in his case.   A 186-193.   The Court also ensured there was a sufficient factual basis for the guilty plea.   A 194-195.

Critically, the Court confirmed Defendant's understanding of the limitations on his appellate rights after pleading guilty: "[the plea agreement] makes clear that if I sentence you to a guidelines sentence or less, you give up your right to appeal or to challenge the sentence

14

for any other legitimate reasons." But the Court also confirmed Defendant's limited right to appeal the Court's ruling on the suppression motion pursuant to Rule 11(a)(2). A 196-197. Once the Court confirmed that Defendant understood his rights, the terms of the plea agreement, and what he was giving up in exchange for his plea, it confirmed that Defendant was not threatened or coerced, and that the plea agreement was not obtained in exchange for any promises not contained in the agreement. A 198.

Put simply, the record here unambiguously establishes that Defendant's guilty plea was intelligent, knowing, and voluntary. As such, Defendant waived his right to challenge any alleged error prior his guilty plea. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Broce*, 488 U.S. 563, 569 (1989).

**C.    The plea agreement is supported by consideration.**

Defendant cites *United States v. Lutchman*, 910 F.3d 33 (2d Cir. 2018). The Government reads this as arguing that Defendant was denied effective assistance of counsel at his plea due to his attorney's failure to obtain a more favorable plea agreement. Dkt. 74, at 31-32 ("That my attorney did not negotiate for a plea agreement that contained any provisions which would limit the eventual sentence of incarceration below the statutory maxima, counsel was ineffective"). Nevertheless, to the extent the Court reads Defendant's citation to *Lutchman* as a challenge to the sufficiency of the consideration underlying the plea agreement it should be rejected.

The Second Circuit has held that a criminal defendant may challenge the validity of a guilty plea on the ground that it is not supported by consideration. *United States v. Brunetti*, 376 F.3d 93, 95 (2d Cir. 2004) ("we agree with the First Circuit . . . that a guilty plea can be challenged for contractual invalidity, including invalidity based on a lack of consideration"). However, for a guilty plea to be supported by sufficient consideration, a defendant need only receive a *chance* at a reduced sentence, or be allowed to retain a right ordinarily forfeited. *Id.* ("[defendant] decided to trade a guilty plea for a *chance* at a reduced sentence. An element of risk was part of his bargain."); *United States v. Sensei*, 542 Fed. Appx. 8, 11 (2d Cir. 2013) (finding that a plea was supported by consideration because the government allowed defendant to appeal the suppression ruling, thereby "provid[ing] him the ability to appeal on the Fourth Amendment issue while entering a guilty plea 'for a *chance* at a reduced sentence.' ") (citations omitted).

Here, Defendant received two primary benefits in exchange for his guilty plea.   First, the Government allowed Defendant to plead guilty to 2 counts of a 6-count indictment. Compare Dkt. 9 (Indictment), with Dkt. 41 (Plea Agreement).   By pleading guilty, Defendant escaped prosecution for 4 counts of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B), and 18 U.S.C. § 2252A(b)(2).   Each of those additional charges carried the potential for a substantial period of incarceration, which could have run consecutively to the charges to which he pled guilty.   *See id.*

16

Second, the plea agreement allowed Defendant to both plead guilty (securing a reduced sentence) and retain the right to appeal the district court's decision on his suppression motion. Dkt. 41 ¶ 28.   Thus, he was given the benefits of a guilty plea to only 2 charges, and was still allowed a chance to reduce his sentence further by appealing the Court's suppression decision.   The guilty plea was therefore supported by consideration.   *Brunetti*, 376 F.3d at 95; *Sensei*, 542 Fed. Appx. at 11 (2d Cir. 2013).

*Lutchman* is readily distinguishable.   In *Lutchman*, the defendant was charged by criminal complaint with one count of attempting to provide material support to a terrorist organization under 18 U.S.C. § 2339B(a)(1).   *See* 16-CR-06071-FPG, Dkt. 1.   The defendant waived indictment and pled guilty to a single-count information charging 18 U.S.C. § 2339B(a)(1).   16-CR-06071-FPG, Dkt. 19.   In the plea agreement, the Government stated that it would "recommend the statutory maximum of 240 months imprisonment."   16-CR-06071-FPG, Dkt. 20 ¶ 14.   Because, *inter alia*, the defendant pled guilty to the sole count of the information, the government did not identify any additional charges that it could prove at trial, and the government asserted that it would seek the statutory maximum on the sole charge, the Court found that the defendant did not receive any benefit for his guilty plea and it therefore lacked consideration.   *Lutchman*, 910 F.3d at 37-38.

By contrast, Defendant escaped prosecution for 4 counts of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B), and 18 U.S.C. § 2252A(b)(2)—each of which could have substantially increased his sentence.   Moreover, defendant was given the ability to plead guilty while retaining the right to appeal the district court's decision on his

suppression motion. Dkt. 41 ¶ 28.   Thus, unlike the defendant in *Lutchman*, Defendant received a substantial benefit for his guilty plea—the chance for a reduced sentence, and a promise not to pursue additional charges for which there was ample proof.   For these reasons, Defendant's guilty plea is valid and bars this motion.

## II.     The Court should deny Defendant's motion on the merits.

Should the Court somehow find that this motion is not barred by Defendant's knowing and voluntary guilty plea and the collateral waiver, the Court should deny the motion on the merits.

Section 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

18 U.S.C. § 2255(a).   "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. Unites States*, 614 F.3d 50, 53 (2d Cir. 2010).

A defendant asserting ineffective assistance of counsel faces a "difficult two-part test." *DeLuca v. Lord*, 77 F.3d 578, 584 (2d Cir. 1996).   The defendant must (1) demonstrate that counsel's performance was deficient as measured against "an objective standard of

reasonableness . . . under prevailing professional norms," and (2) affirmatively prove that counsel's deficient performance was prejudicial to his case. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *see also Vadas v. United States*, 527 F.3d 16, 20 (2d Cir. 2007).

To satisfy the first prong of *Strickland*, the defendant must do more than show, *post hoc*, that his counsel employed poor strategy.   Rather, the defendant bears the "heavy burden" of establishing that his counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."   *Strickland*, 466 U.S. at 687; *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). Thus, there is a "strong presumption" that defense counsel's conduct falls within the broad spectrum of reasonable professional assistance because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ." *Strickland*, 466 U.S. at 689*; Vadas*, 527 F.3d at 20. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Rompilla v. Beard*, 545 U.S. 374, 408 (2005).  "It is therefore only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance."   *Strickland*, 466 U.S. at 711.

To satisfy the second prong of *Strickland*, the defendant must establish a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different, *i.e.*, a probability sufficient to undermine confidence in the outcome.  *Strickland*, 466 U.S. at 694.  A defendant cannot establish prejudice merely by showing that an alleged error had "some conceivable effect" on the result because "not every

error that conceivably could have influenced the outcome undermines the reliability of the
result of the proceeding." *Strickland*, 466 U.S. at 693.

### A. Defendant waived his right to argue ineffective of assistance of counsel with respect to his suppression motion, and that claim in meritless in any event.

Defendant first alleges that his counsel was ineffective when moving for suppression.
Dkt. 74, at 15-30.   Defendant argues that his trial counsel should have argued that the first
search warrant was not sufficiently particular, the amended warrant was facially invalid, and
they could not be saved by the good faith exception.   *Id.*   Defendant waived this argument
by pleading guilty, and it is meritless.

### 1. Defendant waived his ineffective assistance argument by pleading guilty.

As discussed above, it is well-settled that "[a] defendant who 'pleads guilty
unconditionally while represented by counsel may not assert independent claims relating to
[the deprivation of constitutional rights that occurred] prior to the entry of the guilty plea.'
" *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (alterations in original), citing *United
States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996).   "Rather, a defendant 'may only attack the
voluntary and intelligent character of the guilty plea by showing that the advice he received
from counsel was not within [acceptable] standards . . . ' "   *Id.* (alternations in original),
citing *Tollett v. Henderson,* 411 U.S. 258, 267 (1973).


Here, Defendant pled guilty and reserved his right to appeal only the *merits* of the
suppression motion.   Dkt. 41 ¶ 28.   Defendant did not reserve his right to assert ineffective
assistance of counsel with respect to that motion.   Moreover, Defendant does not contend

that his counsel's alleged ineffectiveness with respect to the suppression motion affected his decision to plead guilty. *See e.g., Parisi v. United States*, 529 F.3d 134, 138-139 (2d Cir. 2008) (noting that an ineffective assistance of counsel claim survives a guilty plea only where the ineffectiveness directly implicates the *advice* given to defendant with respect to his decision to take the plea). He therefore waived this argument by pleading guilty, and the Court should dismiss the motion in that respect without a hearing. *Torres*, 129 F.3d at 715 (treating pre-plea ineffectiveness as waived upon entry of guilty plea).

Moreover, Defendant does not allege, nor can he prove, that his counsel's alleged ineffectiveness—particularly with respect to the suppression issue—caused him to plead guilty, or that, but for the alleged error, he would have insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

### 2. Defendant's counsel was not ineffective in his pretrial suppression strategy.

Defendant's claim that his counsel was ineffective when moving to suppress evidence is nothing more than *post hoc* disagreement with reasonable trial strategy, and cannot satisfy the first prong of *Strickland*. Additionally, Defendant has not established that moving for suppression on different grounds would have been successful. He cannot therefore satisfy the second prong of *Strickland* because he was not prejudiced.

### a. Defendant's counsel acted reasonably when he moved to suppress evidence on *Franks* grounds.

Defendant's counsel was not ineffective because he employed reasonable trial strategy

when challenging the searches.   Defendant's counsel argued that the search warrants were invalid because the government allegedly omitted material facts from the search warrant applications.   A 42-44, 115-130.   Specifically, Defendant's counsel argued that the officers were required to apprise the court of evidence that undercut the credibility of S.J., the sole witness.   *Id.*   This was reasonable pretrial strategy, given the detectives' inability to corroborate the details of the victim's statements.   *United States v. Banks*, 08-CR-510, 2009 WL 3165766 (N.D.N.Y. 2009) (granting *Franks* hearing where the government recklessly relied on an unreliable complainant).

Because this victim's testimony formed the primary basis for the warrant application, the officers would have lacked probable cause for the warrant if the court found her testimony not credible.   Challenging the search on that ground was therefore reasonable.   Defendant has not met his heavy burden of establishing that his counsel's conduct fell outside the broad spectrum of reasonable professional assistance.   *Strickland*, 466 U.S. at 689*; Vadas*, 527 F.3d at 20.   The motion should be denied.

### b.  Defendant was not prejudiced by his counsel's pretrial strategy.

Even assuming that Defendant's counsel was constitutionally deficient in his pretrial strategy, Defendant cannot satisfy the second *Strickland* prong and establish that he was prejudiced by the error.   This is because it is not clear that the alternative grounds for suppression that he now advances would have been successful if asserted.

First, the Original Search Warrant was sufficiently particularized. To be sufficiently particular, a warrant must: (1) identify the specific offense for which the police have established probable cause; (2) describe the place or places to be searched; and (3) specify the items to be seized by their relation to a designated crime. *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013).

Here, the Original Warrant was issued based upon probable cause to believe that Defendant had committed Rape in the Third Degree. A 100-111. To facilitate the rape, officers alleged that Defendant used a computer to "chat" with his victim and persuade her to engage in sexual activity with him. A 103. Thus, the warrant allowed police to search the house located at Defendant's address, and authorized them to seize certain enumerated electronic devices. Chat logs, transcripts, screen shots, or other records of these communications could easily be stored on digital storage media and the warrant authorized their seizure. Contrary to Defendant's argument here, they bear a sufficient relation to the suspected crime. *See, e.g., United States v. Triplett*, 684 F.3d 500, 504-506 (5th Cir. 2012) (finding that warrant authorizing broad seizure of electronic devices to search for evidence of missing person was sufficiently particular). Therefore, contrary to Defendant's argument, the warrant was sufficiently particularized and his new grounds for suppression with respect to the Original Search Warrant were unlikely to succeed.

Moreover, even assuming the Original Search Warrant was not sufficiently particular, and the Amended Search Warrant is facially invalid for failure to sufficiently incorporate the Original Search Warrant, the Court would likely have denied suppression under the good

23

faith exception to the exclusionary rule.   *See United States v. Leon*, 468 U.S. 897, 919-21 (1984).

"[E]vidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion and will not be suppressed." *United States v. Eldred*, 933 F.3d 110, 118 (2d Cir. 2019), citing *Leon*, 468 U.S. at 922. "[W]hen the agents executing a search warrant act with an objectively reasonable good-faith belief that their conduct is lawful, improperly obtained evidence remains admissible because in such circumstances the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Id.* (citations and internal quotation marks omitted).   Although the Court will not consider unincorporated, unattached supporting documents to cure a constitutionally defective warrant, "those documents are still relevant to [the] determination of whether the officers acted in good faith."   *Id.*, citing *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010).

Here, even if the Original Search Warrant were not sufficiently particular, that technical legal flaw was not apparent on the face of the warrant such that the officers could be charged with knowledge that the search was unconstitutional.   *United States v. Raymonda*, 780 F.3d 105, 119-20 (2d Cir. 2015) (holding that a police officer is allowed to rely on the legal determination to issue a warrant, provided it is done in good faith).   Thus, the officers acted reasonably when they relied on Judge Wolfgang's legal determination to issue the warrant.   *Leon*, 468 U.S. at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination"); *United States v. Falso,* 544 F.3d 110, 129 (2d Cir.2008) (agents acted reasonably in relying on judge's probable cause determination

because "the error . . .  was committed by the district court in issuing the warrant, not by the officers who executed it"); *United States v. Cancelmo,* 64 F.3d 804, 807 (2d Cir.1995) (holding that any error in issuance of warrant was "attributable to the magistrate who determined that the facts as alleged by the agents established probable cause"); *United States v. Thomas,* 757 F.2d 1359, 1368 (2d Cir.1985) (holding that, where magistrate, "whose duty it is to interpret the law," determined that canine sniff could form basis for probable cause, "it was reasonable for the officer to rely on this determination").

Moreover, as acknowledged in Defendant's motion (Dkt. 74, at 18-19), officers sought the Amended Search Warrant to allow the WNYRCFL to search the devices that were seized. Dkt. 74, at 18-19.   At a minimum, even if the Amended Search Warrant did not meet the technical standard for incorporation, it at least referenced the Original Search Warrant, which specified that there was probable cause to search for evidence of third degree rape, including evidence of electronic communications between Defendant and S.J.   A 100-111.   A police officer or forensic examiner reading the Amended Search Warrant, its incorporation language, and the Original Search Warrant would reasonably believe that it was legally sufficient to authorize the search.   It is unreasonable to charge a police officer in this situation with knowledge that the incorporation language in the Amended Search Warrant was legally insufficient.   *Id.*

Defendant's arguments regarding the officer's alleged bad faith miss the mark. Defendant argues that officers suspected Defendant of possessing child pornography and then performed an overly broad search of his electronic devices to find it.   However, as Defendant

himself points out, Judge Wolfgang did not find probable cause to believe that Defendant disseminated indecent material to a minor, and struck that crime from the warrant.   It was therefore reasonable for the officers to also assume that scope of the warrant, like the probable cause determination, was the product of Justice Wolfgang's reasoned legal analysis, and that she had, in fact, found probable cause to believe Defendant's electronic devices contained evidence of rape in the third degree and crafted the warrant accordingly.   *Leon*, 468 U.S. at 921; *Falso,* 544 F.3d at 129; *Cancelmo*, 64 F.3d at 807; *Thomas,* 757 F.2d at 1368.   Thus, the officers' reliance on the Original Search Warrant and Amended Search Warrant was reasonable, and the evidence would not have been suppressed.

### B.   Defendant's counsel was not ineffective during plea proceedings.

Defendant also argues that his counsel was ineffective in the plea proceedings because he failed to secure a plea that guaranteed a sentence less than the statutory maximum, and because he failed to inform Defendant of a patently meritless actual innocence defense.   Dkt. 74, at 30-34.

### 1.   Defendant's counsel was not ineffective by not negotiating for a sentence below the statutory maximum.

Defense counsel was not ineffective in his plea negotiations because counsel did, in fact, secure a sentence less than the statutory maximum.   Defendant therefore cannot establish prejudice from counsel's failure to get a guarantee when counsel obtained the desired result.

**2.      Defendant's counsel was not ineffective for not informing him of a patently meritless affirmative defense.**

Defendant also argues that his counsel was ineffective at his plea for failing to inform him of a potential "affirmative defense" as to count 2—specifically, under Ninth Circuit case law the Government must prove that he exerted "active or coercive conduct" upon his victim to be convicted under 18 U.S.C. § 2251.   Dkt. 74, at 33.   Defendant thus argues that he had a potential actual innocence defense because "I did not know, nor could the government prove, that I was active or coercive in the situation resulting in Count 2."   *Id.* At 34.

This claim is belied by the record.   First, the case law Defendant cites in inapposite. *United States v. Cooker* involved a defendant who engaged in a sexually charged conversation with a minor that culminated in an otherwise unsolicited picture of the minor's genitals.   360 F.Supp.3d 1095, 1106-1107 (E.D. Wa . 2019).   The Court found that this conduct was insufficient for a reasonable juror to conclude that the defendant "persuaded, encouraged, induced, enticed, or coerced" the victim to send the sexually explicit photo, and the defendant was therefore convicted based on an insufficient plea.   *Id.*, at 1108.

Here, by contrast, Defendant was accused of—and admitted to—communicating with a minor via social media, agreeing with the minor to meet, having sexual intercourse with the minor, and taking pictures of the act, which clearly satisfies the elements of the offense.   Plea ¶ 7; 18 U.S.C. 2551.   Thus, Defendant did not have a viable actual innocence defense, and his counsel was not ineffective for failing to pursue or inform him of a wholly inapplicable defense.   *See Arena*, 180 F.3d at 396-397; *see also Hill v. Lockhart,* 474 U.S. 52, 59 (1985)

("where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial").

Moreover, the Court confirmed that Defendant understood the elements of the offenses to which he was pleading guilty, and that Defendant committed the acts alleged in paragraph 7 of the plea agreement.   A 191-193.   Thus Defendant's conclusory allegation that he did not understand the "standard required to prove that he committed the offense" is belied by the record and his own statements in open court.

For all of these reasons, Defendant's claim that he was denied effective assistance of counsel during his plea is meritless and should be dismissed without an evidentiary hearing.

## C.   Defendant's counsel was not ineffective at sentencing.

Defendant argues that his counsel was ineffective at sentencing for three reasons: (1) failing to object to information in the PSR that he fathered a child with A.M.M., which he claims is belied by paternity testing; (2) allegedly portraying Defendant as a "sexual predator"; and (3) failing to object to the Court's reference to a video tape of Defendant sexually assaulting what appeared to be an unknown 13-year old girl, and whom Defendant now claims is actually 19 years old.   Dkt. 74, at 34-39.

The Court must apply the same two-prong test from *Strickland*, however, "[w]ith respect to a claim of ineffective assistance in sentencing, the defendant must show a

28

reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013), citing *Lafler v. Cooper*, —— U.S. ——, 132 S. Ct. 1376, 1387 (2012).

### 1.   Defendant's counsel was not ineffective for failing to object to an isolated allegation in an extensive PSR.

Defendant's first allegation of ineffective assistance—the failure to object to the PSR insofar as it referenced his sexual assault of A.M.M. and paternity to her child—is meritless. Even assuming that Defendant is not the father of A.M.M.'s child, and that his counsel was aware of this (there is no evidence to conclusively support either conclusion) Defendant cannot establish that he was prejudiced.   The PSR notes many other instances of Defendant sexually assaulting minor girls (including an 8-year old), producing child pornography, and possessing child pornography.   It establishes that Defendant sexually assaulted at least six other victims besides A.M.M, and exhibited a long history of exploiting minor girls for his own sexual gratification.   Despite this, Defendant received a sentence that was 20 years less than the guideline sentence for his crimes.   Put simply, Defendant cannot establish that but for his counsel's failure to contest Defendant's paternity of A.M.M.'s child, he would have received an even less severe sentence.   *See Gonzalez*, 722 F.3d at 130.

### 2.   Defendant's counsel was not ineffective for making fleeting reference to the possibility of future civil confinement to minimize the need for deterrence.

Further, Defendant's second allegation of ineffectiveness is also meritless inasmuch as it was reasonable strategy and did not prejudice him.   The record is clear that defense

counsel's fleeting references to potential civil commitment were intended to demonstrate that a long sentence of incarceration was not necessary to deter future offending under 18 U.S.C. § 3553(a)(2).   It was not, as Defendant inexplicably argues, to paint him as a sexual predator. *See* A 322-323.   Given the magnitude of Defendant's conduct, and the Government's arguments regarding the need for a long prison sentence to deter Defendant from further offending, it was reasonable strategy for Defendant's counsel to note that he may be civilly confined in the future.   *See Strickland,* 466 U.S. 668.   By doing so, he undercut one of the Government's primary arguments with respect to the 18 U.S.C. § 3553(a) factors.

Moreover, Defendant's counsel submitted an extensive sentencing memo discussing his difficult childhood, strong family ties, short criminal history, and unlikelihood to re-offend, then argued extensively for lenience at the sentencing hearing.   A 202-219.   To the extent it was improper to mention civil confinement, it was *de minimis*—Defendant's counsel did so once in his sentencing memorandum and once during his oral presentation.   A 204, 323.   This amounts to two fleeting references in an extensive and comprehensive plea for mercy.   Defendant cannot establish that these fleeting references prejudiced him, or that he would have received a more lenient sentence but for these errors.

### 3.   Defendant's counsel was not ineffective for failing to object to the Court's characterization of Defendant's prior conduct.

Lastly, Defendant argues that his counsel was ineffective for not objecting when the Court referenced a VHS depicting Defendant sexually assaulting an unknown girl, who he now claims was 19 years old.   Even assuming the girl was, in fact, 19 years old (for which

Defendant does not provide support now, and did not allege at sentencing), Defendant does not allege that his counsel was even aware of the girl's true age.   Moreover, for the same reasons that defense counsel's other ostensible errors were not prejudicial, Defendant cannot establish that he was prejudiced by this either.   Put simply, there was ample evidence that Defendant was a serial predator who sexually assaulted and exploited multiple minor girls for his own gratification.   Defendant cannot establish, against the total of his conduct, that he would have received a more lenient sentence had the Court believed that the girl was 19 years old and not 13.

For all of these reasons, defense counsel was not ineffective at sentencing, and the motion should be denied without a hearing.

## **CONCLUSION**

For the foregoing reasons, the government respectfully submits the Court should deny Defendant's motion in its entirety.

DATED: Buffalo, New York, January 31, 2020.

JAMES P. KENNEDY, JR.
United States Attorney

BY:    s/ DAVID J. RUDROFF
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        (716) 843-5806
        David.Rudroff@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.

JASON SMITH,

            Defendant.

                                          19-CV-1365-S
                                          15-CR-0002-S

---

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2020, I electronically filed, the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT JASON SMITH'S MOTION TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE** and I mailed the foregoing, by the U.S. Postal Service, to the following participant:

        Brian Avery Smith (#61750-019)
        Northeast Ohio Correctional Center
        2240 Hubbard Road
        Youngstown, Ohio 44505

                        s/ JENNIFER L. ATKINS