UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASON M. SMITH,

                         Petitioner,

        v.                                                    **DECISION AND ORDER**
                                                               19-CV-1365S
UNITED STATES OF AMERICA,                                      15-CR-2S

                         Respondent.

## I. INTRODUCTION

Presently before this Court is Petitioner Jason Smith's pro se Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255.  For the reasons discussed below, Smith's motion is denied.

## II. BACKGROUND

On January 7, 2015, a federal grand jury returned an indictment against Smith charging him with two counts of producing and four counts of possessing child pornography.  See Docket No. 9.

On June 22, 2016, Smith pleaded guilty to both counts of producing child pornography in violation of 18 U.S.C. § 2251 (a) (Counts 1 and 2).  See Docket Nos. 41, 42.  He did so with the benefit of a plea agreement, in which he agreed that his mandatory minimum sentence by statute on each count was a 15-year term of imprisonment, with a maximum possible sentence of 30 years' imprisonment, a fine of $250,000, a mandatory special assessment of $100, and supervised release of at least five years and up to life. See Plea Agreement, Docket No. 41, ¶ 1.

Smith further agreed that his final Sentencing Guidelines calculations were

1

dependent on whether the upward adjustment in § 4B1.5 (b)(1) the United States Sentencing Guidelines ("U.S.S.G.") applied.  Id. ¶ 14.  That section provides for a 5-level upward adjustment if the defendant's offenses are covered sex crimes and the defendant engaged in a pattern of activity involving prohibited sexual conduct.  See U.S.S.G. § 4B1.5 (b)(1).  If, as the government believed, the guideline applied, Smith agreed that he would have a total offense level of 44 and a criminal history category of I, which would yield a Guidelines sentencing range of 720 months' (60 years) imprisonment, a fine of $25,000 to $250,000, and supervised release of five years to life.  See Plea Agreement, ¶¶ 15-18 (a).  If, as Smith believed, the guideline did not apply, Smith agreed that he would have a total offense level of 39 and a criminal history category of I, which would yield a Guidelines sentencing range of 262-327 months' imprisonment, a fine of $25,000 to $250,000, and supervised release of five years to life.  Id. ¶¶ 15-17, 18 (b).

Notwithstanding this Court's determination concerning the applicability of U.S.S.G. § 4B1.5 (b)(1), both the government and Smith reserved their rights to recommend a sentence outside of the applicable Guidelines range.  Id. ¶ 19.  In addition, Smith waived his right to appeal or collaterally attack any sentence of 720 months' (60 years) imprisonment or less, see id. ¶¶ 25-26, and the government waived its right to appeal any sentence of 262 months' imprisonment or more, see id. ¶ 27.  Smith, however, reserved his right, pursuant to Rule 11 (a)(2) of the Federal Rules of Criminal Procedure, to appeal the denial of his suppression motion, and to withdraw his guilty pleas if his appeal was successful.  Id. ¶ 28.  The government agreed to dismiss the four possession charges at sentencing.  Id. ¶ 23.

On February 1, 2017, Smith appeared for sentencing, at which time this Court

found that the 5-level upward adjustment in § 4B1.5 (b)(1) applied.  See Docket No. 59.

This Court further determined, consistent with the probation officer's findings, that Smith's

total offense level was 43 and his criminal history category was I, which yielded a

Guidelines range of life imprisonment.  See Docket Nos. 59, 62.  After hearing from

counsel and Smith, this Court sentenced Smith to 240 months' (20 years) imprisonment

on each count, to run consecutively, for a cumulative sentence of 480 months (40 years).

See Docket Nos. 61, 62.  It further sentenced him to supervised release for life, a $200

special assessment, and no fine, fees, or costs.  Id.  After imposition of sentence, this

Court granted the government's motion to dismiss the four remaining possession counts.

See Docket No. 61.  The Clerk of Court entered judgment on February 7, 2017.  Id.

Smith appealed his conviction and sentence through a Notice of Appeal filed on

February 21, 2017.  See Docket No. 64.  On April 25, 2018, the United States Court of

Appeals for the Second Circuit affirmed Smith's conviction and sentence upon finding that

his appeal was barred by the waiver provisions of his plea agreement.  See Docket No.

73.  In particular, the court rejected Smith's Rule 11 challenges to his plea proceeding

and instead found that he knowingly and voluntarily waived his appeal rights.  See id.

The court then enforced the appellate waiver to bar Smith's challenge to the

reasonableness of his sentence.  See id.  But as to Smith's claim that he received

ineffective assistance of counsel at the suppression stage, the court declined direct

review, finding that such a claim was better suited for review through a habeas petition to

the district court.  See id.  The court entered its mandate on July 3, 2018.  See id.

Smith filed the instant Motion to Vacate, Set Aside, or Correct his Sentence on

October 4, 2019.  See Docket No. 74.  He contends that he received ineffective assistance

3

of counsel during the suppression, plea, and sentencing phases of his case.  After full briefing, this Court took the motion under advisement without oral argument on April 24, 2020.  See Docket Nos. 74, 81, 87.

## III. DISCUSSION

**A.    § 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences.  That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal.  See Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277 (1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)).  This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes

4

an aversion to retrying issues long after they occur.  See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review.  See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  First, the "mandate rule" bars re-litigation of issues already decided on direct appeal.  See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.").  This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate."  Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)).  But an exception exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition."  Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of non-constitutional, non-jurisdictional claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual prejudice or actual innocence.  See Bousley, 523 U.S. at 622-23 (citations omitted); see

5

also United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011); Brennan v. United States, 867 F.2d 111, 117 (2d Cir. 1989) ("non-constitutional and non-jurisdictional claims are generally procedurally foreclosed to a section 2255 petitioner if not raised on direct appeal").   To satisfy the cause component, the petitioner must show circumstances "external to the petitioner, something that cannot be fairly attributed to him."   Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993).   To satisfy the prejudice component, the petitioner must demonstrate prejudice that creates an "actual and substantial disadvantage, infecting . . . error of constitutional dimensions."   See United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).   To establish actual innocence, the petitioner must show "that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."   Bousley, 523 U.S. at 623 (internal quotation marks and citation omitted).   But this rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal.   See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

In addition to these two rules, waiver principles also apply.   It is well established that a knowing, voluntary, and competent waiver made as part of a plea agreement is presumptively and generally enforceable.   See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam); see also United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001).   "An enforceable waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed."   Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005) (citing Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001)

6

(per curiam)).  Thus, "[i]n no circumstance . . . may a [petitioner] who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless."  United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993). Waivers, however, are strictly construed against the government due to its greater bargaining power and because it usually drafts the plea agreement.  See Yushuvayev v. United States, 532 F. Supp. 2d 455, 468 (E.D.N.Y. 2008).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Leave of court is required to engage in discovery, which may be granted for good cause.  See Rule 6 (a).  Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[1]  Id.  The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents."  Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing.  Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]." Rule 8 (a).  If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A.  See Rule 8

---

[1] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Rule 6 (a).

(c).   A hearing is generally warranted only where the petitioner establishes a plausible claim.  See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims).  However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001).  To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief.  See, e.g., Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

Ultimately, the petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence.  See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

**B.   Smith knowingly, voluntarily, and competently waived his right to appeal and collaterally attack his sentence.**

A defendant's knowing, voluntary, and competent waiver of his right to appeal and collaterally attack his sentence is presumptively enforceable.  See Riggi, 649 F. 3d at 147.  Because a valid waiver itself may bar a petitioner's claims, enforceability must be

determined as a threshold matter.

The petitioner bears the burden of demonstrating that he did not knowingly and voluntarily waive his appeal and collateral attack rights.  See United States v. Hargrove, Nos. 03-CV-6634T, 02-CR-6064T, 01-CR-6112T, 2004 WL 2123497, at *2 (W.D.N.Y. Aug. 10, 2004).   To determine whether a challenged waiver is enforceable, courts examine the underlying record and may rely on a defendant's sworn statements during the plea allocution, see Salerno v. Berbary, 389 F. Supp. 2d 480, 484 (W.D.N.Y. 2005), which statements "carr[y] such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony," United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001).

Smith claims that his waivers and plea agreement are the product of ineffective assistance of counsel.  The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. CONST. amend VI.  It is well established that "the right to counsel is the right to the effective assistance of counsel."  Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

To succeed on his ineffective-assistance-of-counsel claim, Smith must establish both prongs of the two-part test from Strickland v. Washington: (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that "the deficient performance prejudiced" him.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first prong of the <u>Strickland</u> test, Smith must establish that his counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance." <u>Id.</u> at 688, 690. Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'" <u>Aparicio v. Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 689). This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." <u>Strickland</u>, 466 U.S. at 689 (internal citation omitted). The question is ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." <u>Harrington v. Richter</u>, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

To satisfy the second prong of the <u>Strickland</u> test, Smith must establish that his attorney's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>See</u> <u>Strickland</u>, 466 U.S. at 687, 694. The Second Circuit normally "requires some objective evidence other than defendant's assertions to establish prejudice," <u>Pham v. United States</u>, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding," <u>Strickland</u>, 466 U.S. at 693. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial." <u>Id.</u> at 687.

Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test. Strickland, 466 U.S. at 697 (noting that a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one"); see also Stouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991).

Smith lodges several ineffective-assistance-of-counsel arguments concerning his entry of the plea and waivers, which this Court addresses *ad seriatim*. First, relying on United States v. Lutchman, Smith argues that his plea agreement is unsupported by consideration because his lawyer failed to negotiate a sentence below the statutory maximum, and therefore, his waivers are unenforceable. 910 F.3d 33 (2d Cir. 2018). As Smith puts it, his attorney was ineffective because he negotiated "no deal at all." See Petition, Docket No. 74, pp. 15, 37-39.

Lutchman involved a defendant who pleaded guilty to a single-count information charging him with providing material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B (a)(1). Lutchman's plea agreement provided that he would waive indictment, plead guilty, and waive his right to appeal any sentence lesser than or equal to the 240-month statutory maximum penalty. 910 F.3d at 37. While the government agreed to certain Guidelines reductions for acceptance of responsibility, the reductions had no practical effect because the Guidelines range exceeded the statutory maximum penalty, making the Guidelines range 240 months. See id. at 38. The terms of the plea agreement further provided that the government would recommend the statutory maximum penalty, and the government did not articulate or identify any other charges

that it could have brought and proven at trial.  See id.

Finding that Lutchman "received no benefit from his plea beyond what he would have gotten by pleading guilty without an agreement," the court held that his appellate waiver was unenforceable for lack of consideration.  See id.  It did so because it found that Lutchman's plea agreement provided him "with no increment of certainty as to the extent of his liability and punishment, and it provided him no chance at a reduced sentence."  Id. (internal citations and quotations omitted).

Lutchman is readily distinguishable here because Smith realized several benefits in exchange for his guilty plea, including the chance for a reduced sentence (which he received).  First, the government agreed to dismiss and did dismiss the *four* possession-of-child-pornography counts charged in the indictment, which, if successfully prosecuted, would have exposed Smith to additional substantial periods of incarceration that could also have been imposed consecutively.  Second, Smith retained his right to appeal the denial of his suppression motion, which, if successful, could have resulted in withdrawal of the plea or a reduced sentence.  Third, Smith retained the right to argue for imposition of a sentence outside of the applicable Guidelines range.  Consequently, unlike in Lutchman, Smith's plea agreement was supported by adequate consideration.  See, e.g., United States v. Sensei, 542 F. App'x 8, 11 (2d Cir. 2013) (finding plea agreement supported by consideration where the defendant retained the right to appeal denial of suppression motion).  Accordingly, Smith's lawyer's performance was not objectively unreasonable, and the waivers are enforceable.

Next, Smith maintains that his plea to Count 2 was unknowing because he entered it unaware of the elements the government must prove to secure a conviction and

unaware that his conduct did not satisfy the first element of the offense.  See Petition, Docket No. 74, pp. 39-40.  Citing law from the Ninth Circuit, Smith maintains that the government was required to prove that he exerted "active or coercive conduct" upon the victim to be guilty of producing child pornography.  Id. (citing United States v. Cooker, 360 F. Supp. 3d 1095, 1106-07 (E.D. Wash. 2019); United States v. Overton, 573 F.3d 679, 692 (9th Cir. 2009)).  Neither argument is persuasive.

The record reveals that Smith was aware of and understood the elements of his crimes of conviction.  During the plea allocution, Smith confirmed that he understood the charges in Counts 1 and 2, and that he had discussed those charges with his lawyer. See Plea Transcript, Docket No. 68, pp. 6-7.  This Court then drew Smith's attention to the elements of the offenses, described the elements as "critical," and confirmed that Smith understood them.  See id. pp. 7-8.  Specifically, when this Court asked Smith whether he had reviewed the elements with his lawyer and whether he understood them, Smith responded, "I have, and I do."  Id. p. 8.  Smith further confirmed his understanding that if the government was unable to prove each element beyond a reasonable doubt, he could not be convicted.  See id. p. 9.  Consequently, there is no merit in Smith's present contention that his plea was unknowing because he was unaware of the elements of his crimes of conviction.

Similarly, there is no merit to Smith's contention that his lawyer was ineffective for not advising him that the conduct underlying Count 2 failed to satisfy the first element of the offense—that Smith "employed, used, persuaded, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such sexually explicit conduct."  See Plea Agreement, ¶ 6 (a).  Smith admitted that he met

Victim 2, who was less than 16 years of age, on MeetMe.com.  See id. ¶ 7, Count 2 (d).

He further admitted that when he and Victim 2 met in person, he lied about both his name

and age, introducing himself as "James Brayden" and telling Victim 2 that he was 23 years

old, when in fact he was 34.  See id.  Finally, he admitted that he then had sexual

intercourse with Victim 2 and took sexually explicit photographs of her.  See id.

This admitted conduct satisfies the first element of Count 2 and differs starkly from

the conduct in Cooker, the case on which Smith relies, which involved a minor sending

an unsolicited photograph after a sex-charged conversation with the defendant.  See

Cooker, 360 F. Supp. 3d at 1106-1108.  Here, Smith affirmatively lied about his identity

and age in order to coerce and convince underage Victim 2 to meet him for purposes of

engaging in sexual intercourse and activity.[2]  Cooker is therefore wholly distinguishable,

and trial counsel's performance was not objectively unreasonable.

Finally, Smith claims that his plea and waiver were unknowing because he did not

understand the meaning of "collateral attack" when he entered his guilty plea.  See

Petitioner's Reply Brief, Docket No. 87, p. 5.  The record does not bear this out.  Smith,

a college graduate, reviewed his plea agreement with his retained lawyer and signed it

on the advice of counsel.  See Plea Transcript, pp. 3, 4, 5, 6, 8, 9, 10, 13, 15.  He

confirmed that he had no difficulty understanding this Court, his attorney, or any of the

documents in the case, including the plea agreement.  See id. pp. 5, 17.  He also

confirmed that he understood the waiver section of the plea agreement (which contained

the collateral attack provision), and he voiced no questions or concerns when this Court

reviewed that section with him.  See id. p. 14.  Consequently, this Court finds no merit in

---

[2] The offense conduct underlying Count 2 is further described in paragraphs 36-43 of the Presentence Investigation Report.  See Docket No. 62.

Smith's contention that his plea was unknowing due to lack of understanding.

Accordingly, having thoroughly reviewed the record, this Court finds that Smith entered his guilty plea and the waiver provisions knowingly, voluntarily, and competently.

## C.    Smith's remaining claims fail.

Construing Smith's submissions and arguments liberally as required, see Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam), this Court finds that he brings the following additional claims.  First, he alleges that his lawyer was ineffective at the suppression stage by (1) failing to attack the validity of the search warrant, and (2) failing to object to the magistrate judge's Report and Recommendation. See Docket No. 74, pp. 14 (failure to attack search warrant as based on false information); 20 (failure to object to Report and Recommendation), 15, 21, 27-36, 39 (failure to raise meritorious attacks on the validity of the search warrant), 30-32, 39 (failure to challenge particularity of search warrant), and 32-36 (failure to challenge applicability of Leon exception).   Second, Smith claims that his lawyer was ineffective at sentencing because he failed to challenge various statements contained in the Presentence Investigation Report.  See id. at pp. 15, 40-45.

Having found that Smith knowingly, voluntarily, and competently waived his appeal and collateral-attack rights, this Court must enforce the waiver.  Cf. United States v. Granik, 386 F.3d 404, 412 (2d Cir. 2004) ("Knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants.").   While there are narrow exceptions to the general enforceability of waivers, none of them apply here.  A waiver provision is presumptively

enforceable other than

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

Sanford, 841 F.3d at 580 (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)).  Since none of these exceptions apply, this Court must enforce the waiver provision of the plea agreement.

A valid "waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed."  Muniz, 360 F. Supp. 2d at 577.  A valid guilty plea "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006); see Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973) (noting that if a defendant validly admits guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea").  And the Second Circuit has "long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into." Garcia-Santos, 273 F.3d at 509 (citing United States v. Yemitan, 70 F.3d 746, 747-48 (2d Cir. 1995)); see also United States v. Harrison, 699 F.3d 158, 159 (2d Cir. 2012) (per curiam) (finding that the petitioner's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver") (quoting Riggi, 649 F.3d at 150 n. 7 )); Medina v. United States, 16 Civ. 5043

(AT)(JCF), 94 Cr. 0872 (SAS)(JCF), 2017 WL 476670, at *2 (S.D.N.Y. Feb. 3, 2017) (citing Garcia-Santos in rejecting a petitioner's argument that his waiver was not knowing and voluntary "because he could not have known 'that he was also waiving a right that didn't exist at the time of the guilty plea'").  The same is true for enforcement of waivers of collateral attack under § 2255.  See Garcia-Santos, 273 F.3d at 509 ("The reasons for enforcing waivers of direct appeal [when the grounds for appeal arose after the plea agreement was entered into] lead us to the same conclusion as to waivers of collateral attack under § 2255.").

Smith's remaining ineffective-assistance-of-counsel claims are not the type that fall outside of the waiver.   "[A] waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which a waiver has been procured," such as a plea agreement.  Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002).  A waiver may thus be unenforceable if the petitioner has a meritorious claim that it was procured as the result of ineffective assistance of counsel.  See United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004); see El Saleh v. United States, 13-CV-1567 (DLI), 2016 WL 4734601, at *3 (E.D.N.Y. Sept. 9, 2016) ("[A] defendant cannot be bound by an appeal waiver if the decision to enter a plea agreement was the product of counsel's ineffective assistance") (citing Hernandez, 242 F.3d at 114)).  Thus, "[a]n ineffective assistance of counsel claim survives the guilty plea or the appeal waiver *only* where the claim concerns the advice the defendant received from counsel" that informed his or her decision to enter the guilty plea.  Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008) (emphasis added).

This is because, if a petitioner challenges counsel's effectiveness in connection

with the plea agreement itself, he is in essence challenging the constitutionality of the process by which he waived his right to collaterally attack the sentence, and his claim therefore survives the waiver. Id. ("although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's advice about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does."); see also El Saleh, 2016 WL 4734601, at *3 ("[W]here an attorney's ineffective assistance caused a defendant to agree to a waiver, a court must look past the waiver and examine the underlying merits of the ineffective assistance claim."). In short, ineffective-assistance-of-counsel claims that affect the plea process survive the waiver, and those that do not, do not. See id. at *5.

Smith's remaining ineffective-assistance-of-counsel claims do not relate to the plea process. Again, Smith claims that his lawyer was ineffective during the suppression and sentencing stages of his case. But because these claims do not relate to the plea process, they do not survive the valid, enforceable waiver.[3] See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) ("[D]efendant claims that his waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing. We emphatically reject this contention."); United States v. Jimenez, 106 F. App'x 92, 93 (2d Cir. 2004) (citing Monzon, 359 F.3d at 118 ("[A] claim of ineffective assistance is waived when . . . it attacks the sentence itself and not the underlying plea

---

[3] As previously indicated, Smith reserved his right to appeal the denial of his motion to suppress. See Plea Agreement, ¶ 28. That reservation of rights applies to an appeal of the *merits* of Smith's motion and this Court's decision denying it. See id. It does not apply to Smith's current, wholly separate claims that his lawyer was ineffective in presenting the motion and/or failing to pursue certain alternate grounds for suppression. Those claims are instead barred by the valid waiver provisions of the plea agreement because they do not relate to the process by which Smith entered his guilty plea. See Oehne v. United States, No. 03:14-CV-44 (JCH), 2016 WL 10721817, at *11 (D. Conn. Oct. 20, 2016).

agreement that supported the sentence.")); <u>Mitchell v. United States</u>, Case Nos. 14-CV-6350-FPG, 11-CR-6019-FPG, 2020 WL 587883, at *7 (W.D.N.Y. Feb. 6, 2020) (finding pre-plea ineffective-assistance-of-counsel claims barred by valid waiver where they pertained solely to pre-plea errors that did not pertain to the plea process); <u>Oehne v. United States</u>, No. 03:14-CV-44 (JCH), 2016 WL 10721817, at *11 (D. Conn. Oct. 20, 2016) (finding that "suppression-related claim is barred because it is clearly unrelated to the process by which [the defendant] decided to plead guilty"); <u>United States v. Cano</u>, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007) (finding that only "when the claim relates to the negotiation and entry of a plea or sentencing agreement" may "[c]laims of ineffective assistance of counsel . . . survive § 2255 waivers").

Finally, to the extent Smith raises a claim of actual innocence, it fails. Read liberally, Smith argues in his petition that he is actually innocent of Count 2 because his offense conduct does not satisfy each element of the offense. While this Court has already rejected that contention, Smith's claim is otherwise wholly deficient because a claim of actual innocence requires a much stronger showing. To establish actual innocence, Smith must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." <u>Schlup v. Delo</u>, 513 U.S. 298, 324-27, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Smith's bare claim does not approach this standard. <u>See</u> <u>United States v. Hirsch</u>, 239 F.3d 221, 225 (2d Cir. 2001) (finding that a claim of actual innocence "must be supported by evidence").

Consequently, for the reasons stated above, this Court finds that each of Smith's

claims fail.

## D.   Evidentiary Hearing

As indicated above, § 2255 provides that a court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, this Court finds that no evidentiary hearing is warranted or required because Smith's motion and the record conclusively demonstrate that Smith is not entitled to relief under § 2255.  See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

## E.   Certificate of Appealability

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  To make the required "substantial showing," Smith must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted).  Smith has made no such substantial showing of the denial of a constitutional right in this case.  A certificate of appealability will therefore not be issued.

## IV. CONCLUSION

For the reasons stated above, Smith's Motion to Vacate, Set Aside or Correct his

Sentence is denied.  If Smith wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit, in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 74) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 19-CV-1365S.

FURTHER, that the Clerk of Court is directed to mail a copy of this decision to Petitioner at his current address of record.

SO ORDERED.


Dated:         September 16, 2021
               Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge