UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASON M. SMITH,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

**DECISION AND ORDER**
15-CR-2S

## I. INTRODUCTION

On June 22, 2016, Petitioner Jason Smith pleaded guilty to two counts of producing child pornography, in violation of 18 U.S.C. § 2251 (a). See Docket Nos. 41, 42. On February 1, 2017, this Court sentenced Smith to 240 months' (20 years) imprisonment on each count, to run consecutively, for a cumulative sentence of 480 months (40 years). See Docket Nos. 61, 62. It further sentenced him to supervised release for life, a $200 special assessment, and no fine, fees, or costs. Id.

As relevant here, this Court subsequently denied Smith's pro se Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255, on September 16, 2021. See Smith v. United States, 19-CV-1365S, 15-CR-2S, 2021 WL 4225660 (W.D.N.Y. Sept. 16, 2021). Smith appealed that decision, and on February 15, 2024, the United States Court of Appeals for the Second Circuit vacated the judgment and remanded the case for consideration of Smith's counseled claim that his trial lawyer was ineffective for failing to raise certain arguments in moving to suppress the search warrants issued for Smith's residence.[1] See Smith v. United States, 21-2681, 2024 WL 675355 (2d Cir. Feb. 15,

---

[1] This is the only issue on remand. To the extent necessary, this Court reiterates its previous rulings as to

1

2024).  Familiarity with the decisions above is presumed.  With briefing on remand now complete, this Court finds that Smith's motion must again be denied.

## II. BACKGROUND

**A.    The Investigation and Search Warrant Affidavit**

On January 7, 2015, a federal grand jury returned an indictment against Smith charging him with two counts of producing and four counts of possessing child pornography.  See Docket No. 9.  Much of the evidence used to secure the indictment was seized during a search of Smith's residence, the warrant for which is at issue.

According to the details set forth in the search warrant application and supporting affidavit, Detective Keith Kerl of the Lancaster Police Department was assigned to investigate a report of a missing child on February 16, 2014.  (A102.[2])  The missing child was later determined to be S.J., a 15-year-old girl.[3]  Id.

Later in the day, after the report of the missing child, S.J. returned home on her own and indicated that she had been with an adult male whom she met on meetme.com, an online social-networking site.  Id.  S.J. reported that the adult male took her to a residence on Byron Avenue in the Town of Tonawanda, N.Y., and had sex with her.  Id.

Detective Kerl and Detective Jason Batt interviewed S.J. in person on February 16, 2014.  Id.  S.J. told the detectives that the adult male identified himself as "James" on meetme.com, listed his age as 17, listed his residence as Lancaster, N.Y., and used an account called "MixedMaster D."  Id.  S.J. reported that she listed her age as 15 on

---

each of Smith's other arguments raised in his initial motion.  See Smith v. United States, 19-CV-1365S, 15-CR-2S, 2021 WL 4225660 (W.D.N.Y. Sept. 16, 2021).

[2] To remain consistent with the parties, this Court cites the record on appeal, which is contained at pages 51-414 of Docket No. 74.

[3] S.J. is not a victim in this case.

meetme.com (her actual age).  (A103.)  "James" was later determined to be Defendant Smith.

S.J. told the detectives that she and Smith agreed over meetme.com to meet in person that day, after chatting online for several months.  Id.  As planned, Smith picked up S.J. on the corner of Broadway and Woodlawn in Lancaster, at approximately 2:00 p.m.  Id.  He drove a small, gray, 4-door vehicle.  Id.

Smith drove S.J. to his house in Tonawanda.  Id.  It took 30 minutes to get there. Id.  S.J. told detectives that they stopped for food along the way at a Burger King in Depew, N.Y., and to buy drinks at a Dollar Tree or Dollar General in Cheektowaga, N.Y. Id.

Once they arrived at Smith's house, Smith took S.J. to his upstairs bedroom, where he gave her four alcoholic beverages and smoked marijuana with her.  (A104.)  Smith then had sex with S.J.  Id.  Afterwards, Smith drove S.J. back to Woodlawn Avenue in Lancaster.  Id.

S.J. provided detectives with several details about her encounter with Smith.  She stated that when she first saw Smith, he appeared to be 30 years old, not 17.  (A103.) She also said that the house Smith took her to had distinctive red carpeting in the living room.  Id.  S.J. also reported that Smith had several computers in his bedroom that appeared to be linked together.  (A104.)

Immediately after the interview, Detective Kerl assumed operation of S.J.'s meetme.com account.  Id. ¶ 4.  Posing as S.J., Detective Kerl asked Smith to call a telephone number assigned to a Lancaster Police Department undercover phone.  Id. Smith did so, and subsequent investigation of the number that Smith called from revealed

Smith's identity, his address in Tonawanda, and his vehicle—a small, gray, 4-door sedan. (A104-A105.)  Detective Kerl then obtained transcripts of the meetme.com chat sessions between Smith and S.J., between December 4, 2013, and February 16, 2014, as well as the email addresses used by each of them.  (A105.)

The next day, February 17, 2014, the Lancaster Police Department contacted the Buffalo FBI Violent Crimes Against Children Task Force.  Id.  Detective Michael Hockwater joined the case and subpoenaed records from meetme.com and Time Warner Cable.  Id.  From the subpoena returns, Detective Hockwater determined that Smith's email was used to open and operate his meetme.com account, and that Smith's IP address was used to communicate with S.J.  (A105-A106.)  Like Detective Kerl, Detective Hockwater assumed S.J.'s identity on meetme.com to contact Smith.  (A106.)  During the ensuing chat, Smith asked to meet S.J. again in person and discussed how sexually aroused he was while chatting with her.  Id.

Four days later, on February 21, 2014, S.J. picked Smith out of an 8-photograph array.  (A106-A107.)  She also identified the exterior and interior of Smith's home from photographs that Detective Kerl discovered on Zillow.com.  (A107.)  S.J. specifically recalled the distinctive red carpeting in the living room and remembered the bathroom she had used.  Id.

## B.    The Search Warrant Application and Search Warrant

Based on the information above, Detective Kerl maintained that probable cause existed to believe that Smith had committed rape in the third degree, in violation of § 130.25 of the New York Penal Law, and had disseminated indecent material to a minor in the first degree, in violation of § 235.22 of the New York Penal Law.  (A110.)  He further

believed that evidence of these crimes was concealed at Smith's residence, including in his computers and computer equipment. (A107-A110.) Detective Kerl therefore applied for authorization to search Smith's residence for evidence of these crimes. (A110). In particular, he sought authority for officers to conduct the following search and seizure:

> It is requested that this Court allow officers to search and seize the subject's bedding, linens, any and all trace evidence, hair, fibers, blood, body fluids, etc. from the subject's upstairs bedroom. It is also requested that this Court allow officers to search for marijuana and rum as well as permission to take photographs of the residence. It is further requested that this Court allow officers to seize the subject's desktop computers to search for evidence that the subject communicated with the female victim.

(A111.)

On April 8, 2014, the Honorable Penny Wolfgang, New York State Supreme Court, authorized the search of Smith's residence. (A100.) She found probable cause to believe that evidence of the commission of rape in the third degree would be found there.[4] Id. Judge Wolfgang thus authorized Detective Kerl and any other officer of the Lancaster, Cheektowaga, or Town of Tonawanda police departments to search for "marijuana, rum, computers, computer systems, tablets, data storage devices, including but not limited to compact discs, DVD's [sic], flash drives, thumbs [sic] drives, hard drives, etc., bedding, linens, any and all trace evidence, hair, fibers, blood, saliva, bodily fluids, etc., as well permission to take photographs." Id.

Officers executed the search warrant on April 11, 2014. (A112.) Among the property seized was Smith's computer and computer equipment, including media storage devices. (A113-A114.)

---

[4] Judge Wolfgang did not find probable cause as to the disseminating-indecent-material-to-a-minor charge. (A100.)

5

On April 30, 2014, Judge Wolfgang issued an amended search warrant to authorize the Western New York Regional Forensics Laboratory to search Smith's seized computer equipment and devices. (A48.) The amended search warrant authorized law enforcement personnel to search "[t]he computers and hard drives that were seized by authority of a search warrant issued by Judge Penny Wolfgang on April 8, 2014." Id.

On July 2, 2014, Judge Wolfgang issued another amended search warrant to authorize law enforcement personnel to search the property seized for evidence of child pornography. (A49-50.) This authority was sought after initial examination of Smith's computers revealed 1,000 images of child pornography. (A50.) Based on this information, Judge Wolfgang authorized law enforcement "to search for and seize any evidence of child pornography on any and all computers and hard drives that were seized under the authority of the original search warrant dated 04/8/14."[5] (A49.)

Subsequent searches revealed the child pornography that Smith produced using Victim 1 and Victim 2, which constitutes the offense conduct in this case.

## C. The Motion to Suppress

As part of his omnibus pretrial motion, Smith moved to suppress any evidence obtained from the search of his residence. See Motion to Suppress, Docket No. 20, ¶¶ 65-74. He challenged the existence of probable cause and the validity of the search warrant on the basis that law enforcement personnel knew that S.J's account of the alleged crime contained untruths, yet applied for a search warrant anyway, and then failed to disclose the untruths to Judge Wolfgang. Id. ¶¶ 67-70. The alleged untruths pertained to law enforcement's inability to corroborate S.J.'s claim that she and Smith stopped at a

---

[5] After Smith was indicted, a separate federal search warrant for his residence issued. (A51-A76.) That warrant is not directly at issue.

Burger King and a dollar store on the way to Smith's house.  Smith further argued that the warrant application contained inconsistencies and that the <u>Leon</u> good-faith exception did not apply because law enforcement intentionally misled Judge Wolfgang by not alerting her to the lack of corroboration.  See <u>United States v. Leon</u>, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

After full briefing and oral argument, the magistrate judge recommended denial of Smith's motion in a Report, Recommendation, and Order, dated November 3, 2015.  <u>See</u> Docket Nos. 26, 27, 29, 30.  After neither side objected to the Report and Recommendation, this Court accepted it and denied Smith's motion to suppress on January 5, 2016.  <u>See</u> Docket Nos. 36, 37.

## III. DISCUSSION

**A.    § 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of their sentences.  It provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal.  See <u>Bousley v. United States</u>, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting <u>Reed v. Farley</u>, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277

(1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final criminal judgment available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted)).  This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur.  See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review.  See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  First, the "mandate rule" bars re-litigation of issues already decided on direct appeal.  See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.")  This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)).  This rule also bars ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, as well as those involving factual predicates that while not explicitly raised on direct appeal, were impliedly rejected by the appellate court mandate.  See id. at 53-54 (citations omitted).  An exception to this rule exists for cases involving intervening changes in the

8

law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition."  <u>Chin v. United States</u>, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing <u>United States v. Loschiavo</u>, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of claims that could have been raised on direct appeal, unless the petitioner shows cause for failing to raise the claims on direct review and actual "prejudice" or actual innocence.  <u>See</u> <u>Bousley</u>, 523 U.S. at 622-23 (citations omitted); <u>see also</u> <u>Marone v. United States</u>, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.")  This rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal.  <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Leave of court is required to engage in discovery, which may be granted for good cause.  <u>See</u> Rule 6 (a).  Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[6]  <u>Id.</u>  The party requesting discovery

---

[6] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Rule 6 (a).

must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing. Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]." Rule 8 (a). If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A. See Rule 8 (c). A hearing is generally warranted only where the petitioner establishes a plausible claim. See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims). However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001). To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. See, e.g., Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

The petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence. See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

**B.   Smith's Claim**

Smith maintains that he received ineffective assistance of counsel because his trial attorney failed to challenge Judge Wolfgang's search warrant as violative of the Fourth Amendment's particularity requirement. Had counsel pursued that issue, argues Smith, it was reasonably probable that the physical evidence would have been suppressed and the prosecution discontinued. This claim is addressed below.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. CONST. amend VI. It is well established that "the right to counsel is the right to the effective assistance of counsel." Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

Ineffective-assistance-of-counsel claims may be brought in a collateral proceeding under § 2255 regardless of whether they could have been raised, or were raised, on direct appeal.[7] See Massaro, 538 U.S. at 508-09. To succeed on his ineffective-assistance-of-counsel claim, Smith must establish both prongs of the two-part test from Strickland v. Washington: (1) that his counsel's performance "fell below an objective standard of

---

[7] As noted above, however, the mandate rule still applies. That is, ineffective-assistance-of-counsel claims that were raised and resolved on direct appeal, and any claims involving factual predicates that were impliedly rejected on direct appeal, are barred. See Yick Man Mui, 614 F.3d at 53-54 (citations omitted).

reasonableness;" and (2) that "the deficient performance prejudiced" him.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first Strickland prong, Smith must establish that his counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance." Id. at 688, 690.  Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'" Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689).  This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689 (internal citation omitted).  The question is ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

To satisfy the second Strickland prong, Smith must establish that his attorney's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 687, 694.  The Second Circuit normally "requires some objective evidence other than defendant's assertions to establish prejudice," Pham v. United States, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the

result of the proceeding," <u>Strickland</u>, 466 U.S. at 693. Where, as here, the failure to competently litigate a Fourth Amendment issue is the principal allegation of ineffectiveness, the petitioner must "prove that [the] Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).

Accordingly, to determine whether Smith received ineffective assistance of counsel, the merits of his proffered particularity challenge must be examined. This is because counsel is not ineffective for failing to raise frivolous arguments, even if requested by the client to do so. See <u>Weingarten v. United States</u>, 865 F.3d 48, 59 (2d Cir. 2017); <u>Thomas v. United States</u>, 17 Civ. 6877 (KPF), 2020 WL 1285622, at *5 (S.D.N.Y. Mar. 18, 2020). Nor is counsel "obliged to advance every nonfrivolous argument that could be made."[8] <u>Aparicio</u>, 269 F.3d at 95 (citing <u>Evitts v. Lucey</u>, 469 U.S. 387, 394, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985) and <u>Jones v. Barnes</u>, 463 U.S. 745, 754, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)).

"It is the very function of an effective legal counselor to select among the available arguments and raise only 'the most promising issues for review.'" <u>Weingarten</u>, 865 F.3d at 53 (quoting <u>Jones</u>, 463 U.S. at 752). For that reason, courts may not second-guess the reasonable professional judgment of counsel and impose a duty to raise every colorable claim. See <u>id.</u>; see also <u>United States v. Keith</u>, 15-cr-827 (AJN), 20-cv-4410 (AJN), 2022 WL 2657188, at *10 (S.D.N.Y. July 8, 2022) (finding that counsel's "decision

---

[8] Although <u>Aparicio</u> involved the alleged ineffective assistance of appellate counsel, the observation in <u>Aparicio</u> that counsel is under no obligation to present all non-frivolous arguments that could be made has also been applied to ineffective-assistance-of-counsel claims involving trial counsel. See, e.g., <u>Keith</u>, 2022 WL 2657188, at *10; <u>Thomas</u>, 2020 WL 1285622, at *10.

not to advance the specificity and overbreadth arguments in his pretrial motion does not give rise to a viable claim of ineffective assistance, because '[c]ounsel need not pursue every possible argument, and may make reasonable decisions about which arguments present the strongest chance of success.'" (quoting Santana v. Comm'r of Corr. Servs., No. 02-CV-3700 (GEL), 2003 WL 21459569, at *2 (S.D.N.Y. June 24, 2003)).

That said, an attorney's failure to raise an argument can constitute deficient performance. "[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); see also Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000). "[R]elief may be warranted when a decision by counsel [to forgo an argument] cannot be justified as a result of some kind of plausible [litigation] strategy." Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).

Smith agrees that trial counsel's decision to seek suppression of the physical evidence against him was reasonable and appropriate. See Memorandum of Law, Docket No. 104, ¶ 30. Indeed, trial counsel launched a multi-point attack on the validity of the search warrant that included challenging S.J.'s reliability and Detective Kerl's candor with Judge Wolfgang. Although trial counsel's arguments were ultimately unsuccessful, they collectively constituted a thoughtful and reasonable effort to secure suppression.

With the benefit of hindsight and the knowledge that trial counsel's arguments were unpersuasive, Smith faults counsel for not also challenging the search warrant as violative of the Fourth Amendment's particularity requirement. Smith maintains that the search

warrant's lack of particularity as to the electronic equipment required suppression of the physical evidence.  This Court disagrees.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

At issue is the particularity requirement, which has three components.  First, a warrant must identify the offense for which probable cause has been established.  See United States v. Galpin, 720 F.3d 436, 445 (2d Cir. 2013).  Second, a warrant must describe the place to be searched.  See United States v. Voustianiouk, 685 F.3d 206, 211 (2d Cir. 2012).  Third, a warrant must specify the property to be seized and its relation to the offense for which probable cause has been found.  See Galpin, 720 F.3d at 446.

The search warrant here identifies the offense for which probable cause has been established as rape in the third degree, in violation of § 130.25 (2) of the New York Penal Law.  (A100.)  It further describes the place to be searched with the street address and this descriptor: "a light blue, single family, two-story residence with dark blue trim."  Id. The warrant identifies the property to be seized as including "computers, computer systems, tablets, data storage devices, including but not limited to compact discs, DVD's [sic], flash drives, thumbs [sic] drives, hard drives, etc." that constitutes evidence or tends to demonstrate that rape in the third degree was committed.  Id.

Judge Wolfgang's probable-cause determination was supported by Detective Kerl's affidavit.  Along with establishing probable cause to believe that Smith committed

rape in the third degree, the affidavit established probable cause to believe that Smith used the internet to facilitate the offense.[9] Detective Kerl therefore requested authorization to "seize the subject's desktop computers to search for evidence that the subject communicated with the female victim," see A111, a request that Smith concedes was reasonable, see Memorandum of Law, Docket No. 104, ¶ 35 (noting reasonableness of request "[g]iven S.J.'s allegations and the police investigation that had confirmed contact between Smith and S.J. through MeetMe.com").

Judge Wolfgang granted the requested authorization and additionally authorized law enforcement to search for and seize a broader class of electronic devices and equipment that could contain electronic communications between Smith and S.J.— "computers, computer systems, tablets, data storage devices, including but not limited to compact discs, DVD's [sic], flash drives, thumbs [sic] drives, hard drives, etc."—finding that such property constituted evidence of or tended to demonstrate that rape in the third degree was committed.  (A100.)

Smith characterizes Judge Wolfgang's itemization of the property as "a grossly-overbroad laundry list of devices having nothing to do with Internet solicitation."  See Memorandum of Law, Docket No. 104, ¶ 54.  He further faults the search warrant for not limiting the scope of the search on its face to devices or storage media that could contain evidence of internet communications between Smith and S.J.

Judge Wolfgang determined that the itemized list of property was "property constitut[ing] evidence or tending to demonstrate that an offense or crime was committed

---

[9] Smith concedes these points.  See Memorandum of Law, Docket No. 104, ¶ 32 ("The affidavit was sufficient to provide probable cause that Smith had committed Rape in the Third Degree."); id. ¶ 54 ("Judge Wolfgang was presented with a warrant affidavit that demonstrated probable cause to believe that Smith had committed Rape in the Third Degree and that he used the Internet to commit that offense.").

or that a particular person participated in the commission of an offense or crime, to wit: Rape in the Third Degree pursuant to Penal Law 130.25(2)." (A100). Such a finding is supported by the information presented to Judge Wolfgang establishing that Smith and S.J. communicated electronically through meetme.com, including to arrange their in-person encounter. Judge Wolfgang thus found probable cause to believe that the specified items could contain evidence of Smith and S.J.'s online communications that led to their meeting and the commission of the offense. Nowhere does Smith explain why the authorized items—each of which could contain stored electronic communications—could not contain evidence of communications between Smith and S.J.[10]

Smith's second point is stronger. The face of the search warrant arguably lacks particularity because it does not expressly limit the search for computer-related items to those that could contain online communications between Smith and S.J. That limitation is contained only in Detective Kerl's affidavit, which the search warrant references but does not appear to sufficiently incorporate by reference. See Groh v. Ramirez, 540 U.S. 551, 557, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (stating that the Fourth Amendment's particularity requirement must be satisfied "in the warrant, not in the supporting documents"); In re 650 Fifth Ave. & Related Props., 830 F.3d 66, 100 (2d Cir. 2016) ("Language in a warrant that simply references an underlying affidavit does not incorporate the affidavit so as to allow the documents together to satisfy the particularity requirement."). A particularity challenge to the search warrant would therefore not have

---

[10] Smith contends in reply that no evidence was presented to Judge Wolfgang that he transferred any electronic communications from his computer to any storage device. See Memorandum of Law, Docket No. 110, ¶ 13. It is obvious, however, that electronic communications can be easily and instantly secreted onto external storage devices, such that those seized could readily have contained online communications between Smith and S.J., for which law enforcement was authorized to search.

been unfounded.[11]

Even so, the particularity challenge would not have led to suppression of the evidence. Assuming that Smith could have established a constitutional infirmity in the search warrants, suppression would not have been warranted. This is because "[t]he fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." Herring v. United States, 555 U.S. 135, 140, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009). Exclusion, after all, is a court's last resort, not first impulse. See Hudson v. Michigan, 547 U.S. 586, 591, 126 S. Ct. 2159, 165 L. Ed. 2d 56 (2006).

The exclusionary rule contains a good-faith exception. The exception applies to prevent suppression of evidence, unless a "reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization," Leon, 468 U.S. at 923 n. 23. Searches premised on faulty search warrants are therefore saved, except "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992) (citing Leon).

Smith insists that good faith is lacking because Detective Kerl suspected that Smith possessed child pornography from the start and made representations and omissions in his affidavit that were inconsistent with his police reports. The first point is speculative,

---

[11] Smith maintains that colorable challenges to the amended search warrants also existed. Given this Court's finding that the good-faith exception to the exclusionary rule would have excused any technical infirmities in the warrants, those arguments need not be explored.

the second does not establish bad faith.

Even crediting Smith's assertions, none of the alleged inconsistencies or omissions—relating to the description of Smith's car, S.J.'s description of Smith's house, and Detective Hockwater's undercover interactions with Smith—were material or rise to the level of bad faith.  At bottom, there is no persuasive evidence that Detective Kerl or any other law enforcement officer acted deliberately, recklessly, or with gross negligence to disregard Smith's Fourth Amendment rights in securing or executing the state search warrants.  See Davis v. United States, 564 U.S. 229, 238 (2011); see also United States v. Smith, 967 F.3d 198, 211 (2d Cir. 2020) ("[T]he exclusionary rule applies only if the police have violated the Constitution deliberately, recklessly, or with gross negligence, or if a constitutional violation is the product of recurring or systemic negligence.").  The deterrence principles underlying the exclusionary rule are therefore not implicated here. See Leon, 468 U.S. at 909 (noting that the exclusionary rule applies only where it results in appreciable deterrence) (citation omitted).  Thus, even assuming a technical deficiency in the warrants, the government would have amply demonstrated the officers' good-faith reliance on the search warrants, and suppression would have been denied.

Returning to the ineffectiveness claim, it is reiterated that trial counsel mounted an objectively reasonable challenge to the search warrants, albeit one that did not include the colorable particularity argument that Smith now presses.  But again, trial counsel is not obligated to raise every colorable argument to avoid a finding of ineffectiveness.  See, e.g., Keith, 2022 WL 2657188, at *10 (finding no ineffectiveness where counsel failed to raise specificity challenge to warrant).  And it cannot be said that the arguments raised by trial counsel were "clearly and significantly weaker" than the particularity argument.

See <u>Mayo</u>, 13 F.3d at 533.  Moreover, even if trial counsel had raised the particularity argument that Smith maintains he should have, suppression would have been denied under <u>Leon</u>.  Smith therefore fails to demonstrate that trial counsel's performance was constitutionally inadequate or actually prejudiced him.  See <u>Mayo</u>, 13 F.3d at 533 (requiring omitted argument to be significant to implicate ineffective performance); <u>Benjamin v. Comm'r of Corr.</u>, 3:19cv1187 (MPS), 2021 WL 1670871, at *9 (D. Conn. Apr. 28, 2021) (finding in the suppression context that a showing of prejudice under <u>Strickland</u> requires, *inter alia*, that the underlying suppression claim be meritorious); <u>United States v. Pierce</u>, 17-CR-32, 2019 WL 468124, at *2 (W.D.N.Y. Feb. 6, 2019) (providing that "the prejudice prong of the <u>Strickland</u> test is not met if a defendant cannot show, at a minimum, that he could have prevailed on a properly pursued suppression motion) (quotation and citation omitted); <u>Walker v. Bennett</u>, 262 F. Supp. 2d 25, 40 (W.D.N.Y. 2003) (finding no prejudice where "the Court cannot say that a motion to suppress [the defendant's] statement to the police would have been successful").

For these reasons, Smith's ineffective-assistance-of-counsel claim must denied.

## C.    **No evidentiary hearing is required.**

Smith requests a hearing on his petition.  See Memorandum of Law, Docket No. 104, ¶ 72.  As indicated above, § 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, no evidentiary hearing is required because the motion and the record

conclusively demonstrate that Smith is entitled to no relief under § 2255.  Consequently, this Court finds that no hearing is warranted or required.  See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").

**D.    A certificate of appealability will not issue.**

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  To make the required "substantial showing," Smith must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted).  Smith has made no such substantial showing of the denial of a constitutional right in this case.  A certificate of appealability will therefore not issue.

### IV. CONCLUSION

Having considered Smith's grounds for relief individually and cumulatively, and having presided over this matter, with opportunity to observe trial counsel first-hand, this Court finds that Smith has failed to carry his burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment" or to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Harrington, 562 U.S. at 104 (quotations and citations omitted).  Consequently, Smith's § 2255 motion must be denied.

If Smith wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action.  See Fed. R. App. P. 4 (a)(1)(B)(i).  Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## V. ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 74) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

SO ORDERED.


Dated:          April 9, 2025
                Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge

22